FREDERICK E. HEWITT, administrator, *vs.* TAUNTON STREET RAILWAY COMPANY.

Bristol.   November 18, 1896. — February 23, 1897.

Present: FIELD, C. J., ALLEN, KNOWLTON, MORTON, & LATHROP, JJ.

*Loss of Life — Street Railway — Child — Due Care of Parent — Law and Fact — Evidence.*

Whether the parents of a boy three years and eight months old, who while he was running across the street in front of his home was struck and killed by an electric car, exercised due care in leaving him alone without attention for

fifteen minutes in the yard of their home, which had a fence with gates open-
ing on the sidewalk of a main thoroughfare in a city upon which an electric
railway ran, is a question for the jury in an action against the railway corpo-
ration for causing his death.

At the trial of an action against a street railway corporation for causing the death of
a boy three years and eight months old, who was struck by an electric car while
running across the street in front of his home, a question to his father, who was
a witness, whether he considered his boy to be of average intelligence and ordi-
nary capacity, is rightly admitted.

In an action against a street railway corporation for causing the death of the plain-
tiff's intestate, who was struck by an electric car, by reason of the alleged neg-
ligence of the defendant and its servants, evidence is inadmissible to show the
virtual discharge of the motorman of the car from his regular employment after
the accident, for the purpose of proving by implication that the corporation con-
sidered that he had been careless or was incompetent.

TORT, by the administrator of the estate of Frederick Hewitt, for causing his death.

At the trial in the Superior Court, before *Lilley*, J., it appeared that the plaintiff's intestate was a child three years and eight months old, and lived with his parents on Bay Street in Taunton, which was one of the main thoroughfares in the city, and upon which the defendant's electric railway ran; that, on the day of the accident, the child's father came home about five o'clock in the afternoon and went directly into the house, leaving the child alone in the yard, where he was then playing; that the yard adjoined the sidewalk, having a fence with gates opening thereon; that the child's mother was also in the house, and both parents remained there, attending to domestic duties and taking no notice of the child for about fifteen minutes; and that the child was seen to run across the street with a companion, and then start to return, running diagonally across the street with his back turned towards an approaching car, which struck and killed him.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions to the refusal to rule that, " as matter of law, the parents of the child were not exercising due care, and so the plaintiff could not recover," and also to the admission of certain evidence, the nature of which appears in the opinion.

*S. M. Thomas*, for the defendant, submitted the case on a brief.

*L. E. White*, for the plaintiff.

ALLEN, J.    1. In respect to the question whether there was sufficient evidence that due care was exercised by the parents of

the child, the present case falls within the reason of those recent cases in which it was held that the question was for the jury; *Powers* v. *Quincy & Boston Street Railway*, 163 Mass. 5, and cases there cited; and it is to be distinguished from *Casey* v. *Smith*, 152 Mass. 294, where virtually the child was sent to play upon the street.

2. The question to the child's father, whether he considered his boy to be of average intelligence, of ordinary capacity, was not a question as to his sanity or insanity, but of his comparative brightness. It does not need an expert to testify on this subject, and the evidence was rightly admitted. *Laplante* v. *Warren Cotton Mills*, 165 Mass. 487.

3. The plaintiff had introduced some evidence tending to show negligence or carelessness on the part of the defendant in operating its street railway, and unfitness or gross negligence or carelessness of the defendant's servants in managing the car, and thus to bring his case within the provisions of St. 1886, c. 140. It was not in dispute that the regular motor-man, Smith, was instructing Carroll, who had been running on the car with Smith for two or three days, and who at the time of the accident was alone handling the brakes and the power.

The two grounds upon which the plaintiff relied were, that Carroll was an incompetent man in the position which he occupied, and that there was gross negligence on the part of Carroll and Smith in the operation of the car. Carroll was a witness for the defendant, and on his cross-examination the following question and answer were admitted, under exception : " *Q.* Have you had any car to run since the accident? *A.* No car to run steady." There was also some evidence respecting Carroll's pay. In respect to this evidence, the court instructed the jury as follows : " That was admitted as bearing upon the question merely of the light in which Carroll was viewed by the defendant company itself." And again : " It is to be considered only as tending to show, if it has such tendency, in what light Carroll was viewed with reference to competency and fitness by the company itself." The admission of this evidence for the purpose stated presents the question whether the virtual discharge of a servant from his regular employment after an accident can be proved, in a case like this, as an implied admission by his em-

ployer that he had been careless, or was incompetent.    The plaintiff contends that this evidence bore directly on the defendant's negligence or carelessness in employing such a person.

It has heretofore been held that taking additional precautions, after an accident, to prevent other accidents, is not admissible in evidence in a case like this for the purpose of showing negligence. *Shinners* v. *Proprietors of Locks & Canals,* 154 Mass. 168.  *Downey* v. *Sawyer,* 157 Mass. 418.    *Columbia & Puget Sound Railroad* v. *Hawthorne,* 144 U. S. 202.  The same reasons which led to those decisions apply in the present case.    To hold otherwise would tend to discourage the adoption of additional safeguards by improving the quality and raising the standard of the service.  The admission of this evidence for the purpose stated may have prejudiced the defendant's case in the mind of the jury.

*Exceptions sustained.*