MARGARET MCNEIL *vs.* BOSTON ICE COMPANY.

Suffolk.   January 17, 1899. — June 30, 1899.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

*Personal Injuries — Parent and Child — Negligence — Due Care — Law and Fact.*

Whether a mother was negligent in allowing a child two years and ten months old to go out with a sister, who was five years and four months old, to play in a vacant lot at the side of her house, the lot being entirely unfenced and unguarded and fronting on a public street, is a question for the jury in an action against an ice company for injuries caused by a cake of ice falling from the rear end of its wagon in the street upon the younger child; and even if the mother was negligent, it is for the jury to say whether the child was in the exercise of due care, and also, the position of the wagon at the time of the accident and consequently of the child and what she was doing being in dispute, to say what the facts were.

TORT, for personal injuries sustained by the plaintiff through the alleged negligence of the defendant. Trial in the Superior Court, before *Fessenden*, J., who allowed a bill of exceptions, in substance as follows.

It appeared in evidence that the plaintiff was injured by reason of a cake of ice weighing about 140 pounds falling from the rear end of one of the defendant's ice wagons upon her foot, necessitating amputation; that the accident occurred upon Wachusett Street, in Boston, but whether upon the crosswalk where it intersected Walkhill Street, or at a point in Wachusett Street about fifty feet from Walkhill Street, was in dispute; that the accident occurred on August 28, 1896, about half past nine o'clock in the morning; that the plaintiff at the time was two years ten months and twelve days old; that her father was away from home at work, and her mother was engaged in her household duties in the kitchen at the rear of the house, some distance away from the place of the accident; that the plaintiff was with her sister Kate, whose age was five years and four months; that Kate was the oldest person with the plaintiff at the time; that the plaintiff had been permitted by her mother to go out to play with Kate and another child four years old in the yard at the side of her house, which yard led directly into Wachusett Street; and that there was no fence or barrier to prevent the children running from the yard into Wachusett Street.

The mother of the plaintiff testified that, while in the kitchen of her house, she could hear the voices of the children as they played in the yard; and that she heard them about four or five minutes before she became aware of the accident.

Patrick McDonald, a witness called by the plaintiff, testified that on the day of the accident he was at work for the city of Boston as a lamplighter; that the route on which he lighted lamps included Walkhill Street; that he was then on the south side of Walkhill Street and saw the accident; that at the time he was about ninety or a hundred feet away from the place of the accident; that Walkhill Street runs in an easterly and westerly direction and into Hyde Park Avenue; that Wachusett Street runs northerly from Walkhill Street, one end touching Walkhill Street; that at the time of the accident the ice cart was

stopped apparently facing up Wachusett Street, with the rear end towards Walkhill Street; that he was standing on a ladder cleaning a lamp; that he saw a cake of ice fall from the wagon and hit a child and knock her down; that he got down off the ladder and ran to the spot as quickly as he could; that the child was lying down with the cake of ice, or part of it, on her; that just before the child was knocked down she was apparently walking towards Hyde Park Avenue in a westerly direction, right behind the ice wagon on the crosswalk, which was a kind of gravelly walk; that there was no flagged crossing; that the child was facing towards Hyde Park Avenue; that the rear end of the ice cart was within a foot or two of the crossing; that there were a couple of children a little ahead, six or seven feet; that they were all facing towards Hyde Park Avenue; that the ice cart at the time the cake of ice fell out was right close to the crosswalk on Walkhill Street, about in the centre of the street, a little nearer the westerly side of the street, the side nearest Hyde Park Avenue; that there was a kind of steep grade there in going through Wachusett Street from Walkhill Street; that the front part of the ice cart was a good deal higher than the rear part, it might be ten inches or a foot; that the horses were higher still than the front part of the cart; that he saw a tail-board attached to the cart; that at the time the ice fell out the tailboard was hanging down; that there was no iron bar or any kind of a barrier across the cart up from the tailboard; and that the tailboard was one of those swinging tailboards that lifts up and hangs down below the floor of the ice cart.

The defendant introduced evidence tending to show that, at the time of the accident, the wagon was on Wachusett Street about fifty feet away from the crossing and nearly in front of the doorsteps of the first house or " corner house " on the street.

At the close of the evidence, the defendant asked the judge to rule, among other things, as follows:

" 1. Upon all the evidence in the case, the plaintiff cannot recover.

" 2. The plaintiff being less than three years old, and in the highway at the time she was injured, with no proper person to care for her, the fact that she was unattended and being where she was was *prima facie* evidence of contributory negligence on

the part of her mother, and such negligence of the mother is imputed to the child.

" 3. The only evidence of negligence alleged against the defendant is that of leaving the tailboard down, and, assuming that the tailboard was left down as alleged, it was not such a negligent act as would entitle the plaintiff to recover, assuming that the child or its care taker was at the time in the exercise of due care.

" 4. The mother, in allowing the plaintiff to go into the yard in the care of her sister Kate, knowing that there was no fence or barrier to prevent the children from going into the street, and they did wander into the street and the child was there injured, was guilty of contributory negligence.

" 5. Upon the defendant's evidence the plaintiff, at the time she was injured, was in the street away from the crossing and immediately behind the ice cart, and if such was the fact her position at the time contributed to the accident, and the mother being negligent in permitting her to be in the care of Kate, with an opportunity for the child to wander into the street and put herself in a place of danger, the child and the mother were both chargeable with negligence.

" 6. If the accident occurred opposite the front steps of the house, then the testimony of McDonald is discredited, and there is no evidence as to the due care of the plaintiff at the time of the injury, and the plaintiff cannot recover."

The judge refused to give the rulings requested; and the defendant excepted.

The judge instructed the jury, among other things, as follows:

" Has the plaintiff satisfied you by a fair preponderance of the evidence, that the defendant did not use reasonable care? The plaintiff claims that the defendant failed in taking precautions with reference to the escape of ice from its cart. The plaintiff says the defendant ought to have taken some precautions in the way of raising and keeping in place the tailboard of the wagon, or placing some barrier across the rear of the wagon. There is no rule of law which says absolutely that the defendant shall put on any particular appliance, or that it shall keep the tailboard raised, or place any barrier, but the rule of law is that

the defendant shall use reasonable care in the conduct of its business, considering the nature and kind of business in which it is lawfully engaged. The defendant calls your attention to the way in which the ice was delivered, and says that in this place and at this time there was nothing done or left undone which in the proper discharge of its duty should have been done or ought not to have been done. It is important for you, in determining this question, at the outset to ascertain where the injury was received. Where did the accident occur? Did this occur upon the crosswalk? For a person's care varies with the circumstances and conditions of the given case.

" Again, the plaintiff says that if you should fail to be satisfied that the accident occurred at the crossing, and should be satisfied on the whole that it occurred farther up Wachusett Street, there was carelessness there; that it was careless to leave the wagon with nothing to keep the ice from falling out from behind, because some one might be injured who might lawfully be upon the road. The defendant says that this was the usual way of delivering ice; that the injury did not take place at the cross-walk at all, but took place farther up Wachusett Street; that in that place, where the ice came out, it would be unreasonable to require a greater degree of care than was exercised in this particular case; and that in the proper conduct of its business the care that was used, if the injury was received upon the side street, was the ordinary care taken under like circumstances. This will be for you to determine. The question still is, If the injury was received at the crossing, or if it was received farther up the street, still at that time do you say that you are satisfied by a fair preponderance of the evidence that the defendant was negligent? If you are, that is sufficient for this branch of the case. If you fail to be satisfied as to this, then it is your duty to return a verdict for the defendant, and you need not examine any other part or branch of the case. But, if you are satisfied by a fair preponderance of the evidence that the defendant was negligent, then you will examine the next question in the case, which relates to the plaintiff, her position with reference to it. There are two propositions always in these cases: first, the fault of the defendant to be established; secondly, the care, the freedom from fault on the part of the plaintiff, to be established,

and before the plaintiff can recover in cases of this character both propositions must be established. The plaintiff says that she was in the exercise of due care. Here you have a child of tender years, two years and ten months of age. You cannot require or expect the degree of care of that child personally that you would of an adult person; so that if the child were allowed to run upon and play upon the street without any care exercised by the mother, and if, under those circumstances, she was injured when she was doing what you would say children of ordinary prudence would not do, then she cannot recover. Again, you should be careful to ascertain where this injury occurred; for if the child was walking along this crosswalk as a person of ordinary prudence would have done under like circumstances, or exercising such care as a child of sufficient age and intelligence to be able to go upon the street alone would have exercised under such circumstances, then she may recover.

"If you should determine that the injury was received in the road near the corner house, some different considerations should receive your attention. If it was received at the crossing, and the plaintiff was going over the crossing in the usual way, then the question of the mother's care would not be material, because if she was acting in a reasonably prudent way for an adult, or for a child of sufficient intelligence to be left alone on the street, then any negligence of her mother could not be said to contribute to the injury, and it would not be imputed to her. But if the injury was received in the road near the house, then you come to a somewhat more difficult question.,

"A child of these years, two years and ten months, is of such a tender age that she is too young to take care of herself under all circumstances. The plaintiff says that this child was of such tender years that she was really in the custody of her mother; and that even if the child was herself guilty of such acts as would in an older person be negligent, yet, if she was in the custody of her mother, if her mother was reasonably careful, then the child may recover; and that is so.

"The defendant claims that the duty of the mother was to look out for the child. That depends again upon the circumstances and the situation. The defendant says that there was a road passed over by more or less teams, at the time of the day when

the ice cart was to be expected, and that the mother knew it; and to let the child out in the way disclosed by the evidence, to send the child out to play in this way, although there were two other children with it, and although she was listening, was not prudent, and that any parent, or any person, under such circumstances, would say that it was not due care for the safety of the child. These are the two contentions. Put yourselves there, and say, Was that careful and prudent action on the mother's part? Was it such care and prudence as an ordinary person would exercise under such circumstances? If you are satisfied that it was, that is sufficient for this aspect of the case. If you fail to be satisfied as to this, then it is not sufficient, and the plaintiff cannot recover, so far as this aspect of the case is concerned. The claim is that the children were in the yard and the mother could hear them, and it was one of the circumstances to be taken into account in passing upon the question whether the mother herself was reasonably prudent. Leaving a child of the age of two years and ten months unattended, or sending her out upon the street unattended, or her being left there alone by the mother, would be evidence of negligence of the custodian, the mother."

The following question was submitted to the jury: " Was the plaintiff on the crossing at the time the injury was received, or was she in the road near the corner house?"

The jury answered, " On the crossing"; and returned a verdict for the plaintiff. The defendant alleged exceptions.

*C. W. Bartlett & C. C. Mellen*, for the defendant.

*P. M. Keating*, for the plaintiff.

MORTON, J. The jury returned a verdict for the plaintiff, and to the question submitted to them by the court, " Was the plaintiff on the crossing at the time the injury was received, or was she in the road near the corner house?" answered, " On the crossing."

The defendant contends that the mother was negligent in allowing the plaintiff to go out with her oldest sister, a child five years and four months old, to play in the vacant lot at the side of the house, the lot being entirely unfenced and unguarded, and fronting on a public street. But upon the evidence that was, we think, under recent decisions, clearly a question of fact for

the jury. *Slattery* v. *O'Connell*, 153 Mass. 94. *Creed* v. *Kendall*, 156 Mass. 291. *Powers* v. *Quincy & Boston Street Railway*, 163 Mass. 5. *Hewitt* v. *Taunton Street Railway*, 167 Mass. 483.

The defendant does not, as we understand it, controvert the correctness of the instructions, if the question was one proper upon the evidence to be submitted to the jury.

Even if the plaintiff's mother was negligent, the plaintiff would still be entitled to recover if while on the street she " did nothing upon the street which would be deemed dangerous or careless if its movements had been directed by an adult person in charge who was of ordinary and reasonable prudence," and the jury were in substance so instructed. *Wiswell* v. *Doyle*, 160 Mass. 42.

It is possible that the jury may have found that the mother was negligent, but that the plaintiff was not. And the defendant therefore further contends that the plaintiff was not in the exercise of due care. But this again was, we think, upon the evidence, clearly a question of fact for the jury. *Wiswell* v. *Doyle, ubi supra. Lynch* v. *Smith*, 104 Mass. 52. *Collins* v. *South Boston Railroad*, 142 Mass. 301.

The position of the wagon at the time of the accident, and consequently of the plaintiff and what she was doing, were in dispute, and it was for the jury to say what the facts were.

We do not understand the defendant to argue that there was no evidence of negligence on its part.

*Exceptions overruled.*