MICHAEL L. BRENNAN, administrator, *vs.* STANDARD OIL
COMPANY OF NEW YORK.

Essex,   November 1, 1904. — February 27, 1905.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Pleading, Civil.   Negligence,* Gross.

A count by an administrator for causing the death of the plaintiff's intestate, a
child, brought under R. L. c. 171, § 2, for the benefit of the next of kin of the
deceased, cannot be joined with a count at common law for conscious suffering
of the intestate before his death brought as legal representative of his estate.

The gross negligence of an agent or servant causing the death of a person, which
is necessary to make the principal or master liable under R. L. c. 171, § 2, is a
degree of negligence materially greater than the mere lack of ordinary care.

In an action under R. L. c. 171, § 2, for causing the death of the plaintiff's intestate,
a boy less than five years of age, it is no evidence of gross negligence on the
part of the driver of a heavy wagon drawn by three horses abreast, that he
drove at a trot down a slight grade on the right hand side of a street fifty feet
wide including the sidewalks, when forty feet ahead the plaintiff's intestate was
standing on or near the sidewalk with his back to the street and there was noth-
ing to indicate that he would suddenly back or turn and go in front of the
horses.

TORT under St. 1898, c. 565, (R. L. c. 171, § 2,) for causing
the death of the plaintiff's intestate, a boy four years and eight
months old, with a second count at common law for conscious
suffering of the intestate, as stated in the first paragraph of the
opinion.   Writ dated June 12, 1901.

In the Superior Court the case was tried before *Sherman*, J.
The judge denied a motion of the defendant that the plaintiff
should be required to elect upon which count he would rely.
At the close of the evidence the defendant asked the judge to
make the following rulings : 1. On all the evidence the plaintiff
is not entitled to recover under the first count.   2. There is no
evidence of gross negligence of any agent or servant of the cor-
poration within the meaning of the statute on which the first
count depends.   3. There is no evidence that the plaintiff's in-
testate was in the exercise of due care.   4. There is no evidence
of due care on the part of the parents of the plaintiff's intestate.
5. The parents were negligent in permitting the child to be
upon the street unattended at the time and under the circum-

stances shown by the evidence, or if not so negligent because of the child's intelligence and experience the boy was himself negligent and failed to comply with the standard of boys of his age who are ordinarily careful and therefore the plaintiff cannot recover. 6. On all the evidence the plaintiff is not entitled to recover under the second count. 7. The plaintiff has shown no negligence on the part of the defendant or its agents and cannot, therefore, recover on the second count.

The judge refused to make any of the rulings requested, and submitted the case to the jury, who returned a verdict for the plaintiff in the sum of $5,500, of which $5,000 was assessed under the first count and $500 under the second count. At the request of the defendant the judge reported the case for determination by this court. If the verdict could stand upon both counts, it was to stand. If it could stand only on one count, the plaintiff having signified his election to have it stand on the first, it was to stand on that count. If the verdict could not stand on either count, it was to be set aside, or such order was to be made as law and justice required.

*W. A. Munroe*, (*A. M. Chandler* with him,) for the defendant.
*P. J. McCusker*, for the plaintiff.

KNOWLTON, C. J. The first count is founded upon an alleged statutory liability for causing the death of the plaintiff's intestate, which the plaintiff seeks to enforce as the representative of the next of kin, for whom he would hold the proceeds. The second count is upon the liability at common law, for injuries to the intestate, for which he had a right of action during his life, and the claim is made by the plaintiff as legal representative of the estate of the deceased, for which he would hold the proceeds. In the first the plaintiff acts only as trustee for the next of kin, in the second only as trustee for those interested in the estate. These claims do not accrue to him in the same capacity, and hence by the rules of pleading at common law, which in this respect have not been changed by our statutes, they cannot be joined in the same action. Gould, Pl. c. 4, § 93, and cases cited. *Cincinnati, Hamilton & Dayton Railroad* v. *Chester*, 57 Ind. 297. See also *Ranney* v. *St. Johnsbury & Lake Champlain Railroad*, 64 Vt. 277, where this principle was recognized but not applied. The verdict therefore cannot stand on both counts.

If it can stand upon only one count, the plaintiff has elected to rely upon the first. This makes it necessary to inquire whether the evidence warranted the verdict upon that count. Since the deceased was a child only four years and eight months old, it was incumbent on the plaintiff to show that there was no contributory negligence on the part of the deceased or of those who had charge of him. Although the question is not free from difficulty, we will assume in favor of the plaintiff, without deciding, that the evidence would entitle him to go to the jury on this part of the case.

To maintain the action for the death of the plaintiff's intestate, it must be shown that the accident was caused by the gross negligence of the defendant's servant, the driver of the team. The statute upon which the plaintiff relies, recognizes or creates a distinction between ordinary negligence and gross negligence. Death caused by the personal negligence of a defendant, without fault of the deceased person, creates a liability. But for a death caused by the negligence of the defendant's servants there is no liability unless the negligence is gross. The degree of difference between negligence and gross negligence, under this statute, cannot be stated with mathematical accuracy. But gross negligence is a materially greater degree of negligence than the mere lack of ordinary care. The statute compels us to recognize this distinction in the trial of cases like that now before us.

The plaintiff's intestate was run over and fatally injured on Bridge Street in Salem, which is a way that leads from Salem to the adjacent city of Beverly. It is fifty feet wide, including the sidewalks, each of which is from six feet to six and one half feet wide. The gutters are paved and are five and one half feet wide from the curbstone. We may infer that the street is paved or macadamized, and smooth and hard between the gutters. At a point about two hundred and sixty or two hundred and seventy feet from the place of the accident, there is a grade of four feet in one hundred, and this diminishes to two feet in one hundred near the place of the accident. The defendant's driver, at about half past five o'clock in the afternoon of May 4, 1901, was driving down this slight descent, on the right hand side of the middle of the street, a team consisting of a heavy tank wagon drawn

by three horses, harnessed, as we understand, all abreast, and weighing from fourteen hundred to sixteen hundred pounds each.    According to the testimony of all the witnesses, the plaintiff's intestate was standing on or near the sidewalk as the team approached, and went out in front of the team, immediately before the accident.    The driver testified, without contradiction, that there was a driveway across the sidewalk at that point.    The first of the plaintiff's witnesses who saw the accident said that he first saw the boy when the team was about forty feet from the boy, and that " he was backing out from the sidewalk into the gutter."    The next witness for the plaintiff said that, when he first saw him, he " stood opposite the gutter, about three or four feet from the curbstone."    This was just before the accident, and the boy stood with his back towards the witness, who was on the opposite side of the street.    The witness did not see the accident itself, but heard the noise, the wagon shut off his view, he then saw the child lying in the street, and a man jumped off from the tank wagon and picked him up.    These were the only witnesses, called by the plaintiff, who saw the boy immediately before the accident. One Casperson, called by the defendant, testified that he saw " the boy jump right before the horses," and the horses ran over him.    He said the driver stopped the horses very quickly, and took the child in his arms and carried him to his father.    The driver testified that he was driving about four miles an hour, with his foot on the brake, when he saw the boy standing about twenty feet ahead of the horses, with his back towards the street; that when he got within ten feet of him, the boy started backwards, and he " hollered ", put on the brake hard with his foot, pulled back on the reins and swung his horses to the left, and that the boy disappeared from his view.    He said that the movement of the boy backward was a quick motion, and that if he had not started back the nearest of the three horses would have passed three or four or five feet away from him.    Another witness, a boy nine years of age, said that the plaintiff's intestate was turning sideways and walking across the street " kind of fast," when he was struck.    He said the driver " hollered and pulled his horses in and put the brake on."

A helper who was on the team at the time of the accident

testified that it was going at a speed of not more than four miles an hour, and that he first saw the boy about twenty feet ahead of the horses, standing in the gutter with his face toward the sidewalk, and that as they "got down to him [he] turned around and started to go across the street and he ran into the horse." He said that the driver "put his foot heavier on to the brake and pulled the horses into the breeching." ˆ These were all the witnesses who saw the accident.   There was no contradiction as to the conduct of the driver after the time when the boy began to back into the street.   There was testimony by one witness, called by the plaintiff, that the driver started his horses into a trot when he began to go down the grade.   One witness testified that the team was going fast at the time of the accident, and another that it was going very fast.   But one of these witnesses testified that the boy was backing "from the sidewalk into the gutter," about forty feet in front of the team when he first saw him, and that the team had passed about twenty or thirty feet beyond him when it was stopped.   The other estimated the distance that the team had passed beyond the boy when it was stopped, at thirty or forty feet.   One other witness estimated this distance at thirty feet, and several others gave estimates varying from five to twenty feet.   Another witness said that the horses were going at a moderate speed, not fast.   The above was the only testimony tending to show that the team was going fast.

The only testimony indicating that the driver was not exercising a high degree of care is that in regard to the speed of the team.   This comes from the two witnesses already referred to ; but their general indefinite testimony that he was driving fast must be interpreted in connection with their specific statements as to the distance within which this large and heavy team, going upon a smooth hard road, came to a stop.   It is manifestly impossible that the team could have been brought to a dead stop within the distance stated, if it had been going very fast.   The admitted facts cannot be ignored, even though we leave out of consideration the other evidence relied on by the defendant. Unless it is to be held that a team of this kind shall not be permitted to go faster than at a walk in such a street, there is little in this case to show a want of care on the part of the driver.

According to the testimony of all the witnesses, the plaintiff's intestate was standing with his back to the street, well out of the team's line of travel, and the driver had no reason to anticipate that he would suddenly back or turn so as to come into his course.

The burden was on the plaintiff to establish the proposition that the driver was not only negligent, but grossly negligent. The distinction between these degrees of negligence is established by the statute, and we are of opinion that there was no evidence to warrant a verdict for the plaintiff.

*Verdict set aside.*