PALSQUALE LANCI, administrator, *vs.* BOSTON ELEVATED RAILWAY COMPANY.

Suffolk.   November 11, 1907.— December 31, 1907.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Negligence*, Street railway, Causing death, Gross.

At the trial of an action against a street railway company under R. L. c. 111, § 267, to recover for the death of a woman which was alleged to have been caused, while she was a passenger on a car of the defendant in an evening in early October, by reason of gross negligence on the part of the conductor of the car, there was evidence which tended to show that the plaintiff's intestate, just before the accident, was sitting in a closed car near the front door, that there were not more than fourteen other passengers, that, after she and two others had signalled for the car to stop, she remained in her seat until it came to a full stop, when, the other passengers leaving by the rear door, she, with bundles in her hands, pushed the front door open with her shoulder, passed out on to the front platform and was getting off the car when the conductor gave the starting signal, the car started and she was thrown, receiving injuries from which she

afterwards died.  The conductor all the time was at his place at the rear door.
*Held,* that there was nothing to show such knowledge on the part of the con-
ductor of the movements of the plaintiff's intestate, or such failure on his part
to perform his ordinary duties under the circumstances as to indicate the gross
negligence which, by R. L. c. 111, § 267, is made essential to the maintenance of
the action.

TORT under R. L. c. 111, § 267, by the administrator of Mary
Fama, whose death was alleged to have been caused while she
was a passenger of the defendant by reason of gross negligence
of the defendant's servants.  Writ in the Superior Court for the
county of Suffolk dated May 20, 1903.

There was a trial before *Bell,* J., who, at the close of the evi-
dence, directed a verdict for the defendant, and the plaintiff
excepted.  The facts are stated in the opinion.

*D. E. Hall,* (*R. W. Dunbar* with him,) for the plaintiff.

*E. P. Saltonstall,* (*S. H. E. Freund* with him,) for the de-
fendant.

KNOWLTON, C. J.  The plaintiff's intestate, a woman about
forty years of age, stepped from the forward end of one of the
defendant's cars while it was in motion, fell and was killed.
The only question in the case is whether there was any evidence
that the accident was caused by the gross negligence of the
defendant's servants.

The accident happened on Tremont Street in Boston, between
Whittier Street and Vernon Street, in the evening of October 8,
1902.  The vehicle was an ordinary closed car, containing at
the time not more than fifteen passengers.  The plaintiff's intes-
tate sat on the right hand side, in the forward part of the car,
not far from the door.  The plaintiff and the defendant pre-
sented different accounts and different theories of the way in
which the accident happened.  The testimony of the defendant's
witnesses tended to show that the car did not stop at Whittier
Street, and that the intestate arose, as if desiring to alight, when
the conductor gave one stroke of the bell to stop the car at the
next crossing, which was at Vernon Street; that the woman,
without stopping, passed quickly out at the forward door and
stepped off the car, and that the conductor, as he saw her about
to do this, gave three strokes of the bell to stop the car quickly,
whereupon it was stopped immediately, leaving the middle of
the car nearly opposite the place where the woman fell.  The

defendant's theory that she got off in this way was supported by most of the witnesses, and the great weight of the evidence. If the accident happened in this way there was nothing to show negligence on the part of the defendant's servants.

The plaintiff introduced a witness who testified that he sat on the left hand side of the car, very near the forward door ; that the woman had two bundles in her hands, and sat on the opposite side, with no one between her and the door ; that, before the car reached Whittier Street, she and two other passengers each gave a signal to the conductor to stop at Whittier Street ; that she remained in her seat until the car came to a full stop, and then went to the forward door which stood part way open, and pushed her shoulder against it and slid it entirely open, and went out and stepped off the car at the right hand side ; that while she was stepping off the conductor gave two bells to start the car, and the car started and caused her to fall. He testified, and it was undisputed, that there was a man standing near the motorman, on his left. There was corroboration of a part of the testimony of this witness by another witness who said that he thought the car stopped at Whittier Street before the plaintiff's intestate got off, but was not certain of it. The only other evidence in regard to the motorman was that he was looking straight forward, and it is not contended that he was grossly negligent. On the testimony of the witness relied on by the plaintiff, when the car stopped at Whittier Street passengers got off at the rear door, not more than three or four in number, perhaps not more than one or two. All the evidence tended to show that the conductor was in his place at the rear of the car.

The plaintiff's contention is that the jury might have found the conductor grossly negligent in not knowing that the plaintiff's intestate was leaving the car at the front door while the car was standing at Whittier Street, and in starting the car before she got off.

If there were three persons who gave signals to stop the car at that street, of whom the intestate was the farthest from the conductor, the conductor could not be found guilty of negligence if he stopped the car on the signal of one of the others, without noticing her signal, and without knowing that she wished to alight. While, upon the defendant's theory of the accident, with

the passengers all sitting in their seats, there was nothing to obstruct his view of the intestate when she went out of the car, upon the plaintiff's theory there were other passengers making their way through the car, and alighting at its rear end, whose presence would interfere with his view of the forward door. He would naturally be observing the movements of the passengers passing out at the rear, to see when they had all completed their exit. In the evening, when the way to the rear door was open and there were but few passengers in the car, of whom two or three or four were passing out at the rear end, he would not naturally expect that a woman would go out alone at the forward door, and a jury would not be warranted in finding that he was grossly negligent, if they properly could find that he was negligent at all, in failing to notice that this woman stepped out at that door while the others were passing out towards the rear, and that she was on the platform in front after the others had alighted. Upon the testimony of the plaintiff's witness there was nothing to show such knowledge on the part of the conductor, or such failure to perform the ordinary duties of a conductor under such circumstances, as to indicate gross negligence on his part.

The statute on which the plaintiff relies (R. L. c. 111, § 267) recognizes a difference between gross negligence and a mere want of ordinary care. This distinction cannot be disregarded by the courts. *Brennan* v. *Standard Oil Co.* 187 Mass. 376. *Caswell* v. *Boston Elevated Railway*, 190 Mass. 527. *Evensen* v. *Lexington & Boston Street Railway*, 187 Mass. 77, 79. While the gross negligence referred to in this statute does not necessarily include the wanton, reckless or wilful misconduct which may be the foundation of a criminal prosecution for a wrong inflicted through gross negligence, or of a suit for damages by a trespasser, or by one who was not in the exercise of ordinary care in reference to the conditions which led up to the injury, (see *Bjornquist* v. *Boston & Albany Railroad*, 185 Mass. 130, 134, and *Banks* v. *Braman*, 188 Mass. 367,) it is something more than the mere lack of ordinary care.

*Exceptions overruled.*