VINCENZO DIMAURO, administrator, *vs.* LINWOOD STREET RAILWAY COMPANY.

Worcester, September 29, 1908. — October 29, 1908.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Gross, Street railway, Causing death.

Statement by LORING, J., of what this court has decided to be the "gross negligence" of a servant, agent or employee, which, when it causes death, is the basis of an action on behalf of the widow or next of kin of the person whose life is lost against the employer of the person who was grossly negligent.

At the trial of an action of tort against a street railway company to recover for the death of the plaintiff's intestate, which was alleged to have been caused by his being run over by reason of gross negligence on the part of the motorman of a car of the defendant, there was evidence tending to show that the plaintiff's intestate was an Italian, who at the time of the accident was working in a trench which was being dug for sewer pipes in a highway, that at the side of the trench was a pile of gravel and stones and, beyond it, the defendant's tracks ; that just before the accident a tip cart had been driven upon the pile of gravel and stones and the plaintiff's intestate and others were engaged in the work of causing it to dump its load, the plaintiff's intestate bending over and pushing down on one end of the cart and having his back toward the direction from which the car came, that the hubs of the cart wheels were at least three feet from the nearer rail of the street railway track, and that the overhang of the defendant's car was not

more than twelve inches; that the foreman under whom the plaintiff's intestate was working, seeing the car approaching, called out to the motorman, who was looking in his direction all the time, to stop, and, upon his failing to slacken his speed, motioned to him with his hand to stop, and then called to the plaintiff's intestate to "look out for the car"; that thereupon the plaintiff's intestate straightened up and brought his body so near the track that the car struck him upon the hip, whereupon he fell, rolled under the car and was killed, his body being dragged at least eight feet and the car running at least forty-six feet after it struck him; that the motorman was under orders from the defendant's superintendent to run not faster than four miles an hour when passing the sewer excavation, and that at the time of the accident he was disobeying the order and that the car was going faster than five miles an hour. One witness testified that the car was going "in a hurry; fast." *Held*, that the evidence would not warrant a finding that the motorman was guilty of gross negligence.

TORT to recover for the death of the plaintiff's intestate who, it was alleged, while he was working as a laborer in a street on June 22, 1906, was run over and killed by a car of the defendant because of gross negligence on the part of the motorman. Writ in the Superior Court for the county of Worcester dated October 18, 1906.

There was a trial before *Dana*, J. At the close of the evidence introduced on behalf of the plaintiff, the presiding judge directed a verdict for the defendant, and the plaintiff excepted.

The facts are stated in the opinion.

*M. M. Taylor*, for the plaintiff.

*I. McD. Garfield*, for the defendant.

LORING, J. We are of opinion that the evidence did not warrant a finding of gross negligence on the part of the defendant's servants.

In view of the argument made in the case at bar we repeat what has been decided: First. It was decided in *Banks* v. *Braman*, 188 Mass. 367, that gross negligence under R. L. c. 111, § 267, is not the same thing as a wanton act which dispenses with proof by a plaintiff of the fact that his negligence was not a contributory cause of the accident. See in this connection *Lanci* v. *Boston Elevated Railway*, 197 Mass. 32, 35, and a note to *Dolphin* v. *Worcester Consolidated Street Railway*, 189 Mass. 270, 273, and a note to *Fitzmaurice* v. *New York, New Haven, & Hartford Railroad*, 192 Mass. 159, 162. Second. Gross negligence as distinguished from ordinary negligence was created by the act under which this action was brought, (R. L. c. 111, § 267,) and exists by force of the provisions of that statute. See

*Dolphin* v. *Worcester Consolidated Street Railway*, 189 Mass. 270, 273. Third. In *Dolphin* v. *Worcester Consolidated Street Railway*, *ubi supra*, where the degree of care due was the highest degree of care, the defendant being a carrier and the plaintiff one of its passengers, it was held by the court that gross negligence means a gross failure to exercise the highest degree of care. Where the duty owed by the defendant is to exercise ordinary care, gross negligence has been defined to be " a materially greater degree of negligence than the lack of ordinary care." See *Brennan* v. *Standard Oil Co.* 187 Mass. 376, 378 ; *Manning* v. *Conway*, 192 Mass. 122, 125 ; *Lanci* v. *Boston Elevated Railway*, 197 Mass. 32. In such a case gross negligence may also be defined to be a failure to exercise a slight degree of care.

The evidence introduced by the plaintiff showed that his intestate, one Paciello by name, was killed by a car of the defendant under the following circumstances. He was a member of a gang of some twenty-five to thirty Italians engaged in digging a trench for sewer pipes. This trench was in a public way between Linwood, a station on a steam railroad, and the town of Whitinsville. In this same public way the tracks of the defendant were laid. On the day in question a heap of gravel and cobble stones, some three feet high in the middle of the heap, had been made by the dumping of material which came from the digging of the trench. Several teams had dumped loads at this place before the team in question came there to dump its load. The method of dumping had been for the successive teams to drive up on to the gravel previously dumped, and then dump its load. The plaintiff's intestate and another Italian, Delgrosso by name, were digging in the trench when the team in question drove up on to the heap of gravel. It was a four wheel dump cart. Paciello and Delgrosso left the trench to help dump this load of gravel. The horses and cart had come to a stop parallel to the defendant's track, with the tracks on the left of the team as the team stood facing Linwood. Rosetti, the foreman of the gang, stood at the front of the team, prying up the forward end of the dump cart with an iron bar. Paciello and Delgrosso were at the back of the cart, one on each side of it, bearing down on that end to help dump the gravel.

Rosetti testified that he saw the defendant's car when it was

one hundred feet away, and that he then called out for it to stop. Seeing that there was no change in its speed, he signalled it to stop by raising his hand, but the car continued to come on at the same rate of speed. He also testified that the motorman was looking in his direction all the time.

It was proved that the defendant had issued an order, properly posted, that cars "should not run exceeding four miles an hour by the sewer construction."

In addition there was evidence from an expert as to a hypothetical case, covering what the jury were warranted in finding to be the facts in the case at bar, that a motorman with a slack brake chain ought to have been able to stop the car running four miles an hour within twenty feet, and at five miles an hour within twenty-seven feet.

The only testimony as to the speed at which the defendant's car was running, in addition to what has been stated, came from Delgrosso, who said that the car was coming all the time at the same rate of speed; "in a hurry; fast."

This warranted a finding that the defendant's car was going faster than five miles an hour. That fact, in connection with the defendant's rule that its cars should not run over four miles an hour while going by sewer construction, would have warranted a finding that the motorman was negligent within the rule established in Stevens v. Boston Elevated Railway, 184 Mass. 476.

The evidence put the hub of the rear wheel of the dump cart "about three to four feet from the track," and the overhang of the defendant's car at ten to twelve inches. This left a clearance of two to three feet between the hub of the wheel and the defendant's car. Paciello was on the side of the dump cart facing toward Linwood, that is to say, with his back toward Whitinsville, where the car in question was coming from. He was bending over, bearing down on the end of the cart (as we have said) when Rosetti the foreman called out to him, "guarda tevo per carro," or "guarde tevo del carro," which being translated means "look out for the car" or "look out for the cart." Thereupon Paciello straightened up, looked round over his right shoulder, and in doing so brought his body over the line of the outside of the defendant's car, was struck on the hip, rolled over

and was killed by the rear wheels.   Rosetti's exact words were:
" He moved his body or the car would not have touched him."
The distance from the place where Paciello was struck to the
place where he lay dead was from eight to ten feet, and the
back end of the car, when it came to a stop, was ten to twelve
feet from the body of Paciello where it lay dead.   The car was
twenty-eight feet long, so that from the place where Paciello
was struck to the place where the front of the car, the part
which struck him, stopped was about fifty feet.

The question here is whether this evidence warranted a find-
ing of gross negligence on the part of the motorman, and we
are of opinion that it did not.   It is true that the jury were
warranted in finding that the motorman saw or ought to have
seen Paciello.   But it is also true that there was a clearance of
two to three feet between the hub of the wheel and the motor-
man's car, and that Paciello would not have been hurt if he had
stayed where he was and not swung himself out into the line of
the side of the car just as the car reached him.   To run a car at
something over five miles an hour under these circumstances is
not, in our opinion, evidence of gross negligence.

The plaintiff's counsel contended that the evidence in the case
at bar was stronger than that in the following cases:  *Common-
wealth* v. *Vermont & Massachusetts Railway*, 108 Mass. 7 ; *Tilton*
v. *Boston & Albany Railroad,* 169 Mass. 253 ; *Young* v. *New
York, New Haven, & Hartford Railroad,* 171 Mass. 33 ; *Walsh* v.
*Boston & Maine Railroad,* 171 Mass. 52, 56 ; *Lutolf* v. *United
Electric Light Co.* 184 Mass. 53, 58 ; *Hartford* v. *New York,
New Haven, & Hartford Railroad,* 184 Mass. 365 ; *Hale* v. *New
York, New Haven, & Hartford Railroad,* 190 Mass. 84.    We
have examined these cases and find that they do not support
that contention.

*Exceptions overruled.*