DON M. INGRAHAM, administrator, *vs.* BOSTON AND NORTHER STREET RAILWAY COMPANY.

SAME *vs.* SAME.

DON M. INGRAHAM *vs.* SAME.

Essex. November 3, 1910. — January 6, 1911.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Negligence,* Imputed, Of person in charge of child, Street railway.

At the trial of actions against a street railway company for the conscious suffering and death of a girl three years and four months of age, caused by her being run over by a street car, there was evidence tending to show that, on the day in question the child had been with her mother until a little before 11 A.M., while the mother was doing her housework, that then she was allowed by her mother to go out and play in a yard in front of her home with a boy acquaintance four years and three months of age, they being constantly within the mother's view from the window, that the yard was enclosed on three sides but was open on the side of the street, which was an ordinary village street not thickly settled, along which ran a single street railway track on the other side of the street from the child's home where cars passed half hourly, that the mother repeatedly had instructed the child not to leave the yard, and had explained to her the dangers of doing so, and that the child never before had disobeyed, that at five minutes before eleven the mother looked out of the window into the yard and the children then were playing there, that thereafter the children without the knowledge of the mother left the yard, went eight hundred feet down the street into a yard where workmen were felling trees, and were at once warned to move out of the way of the trees, that the girl went out of the yard into the street, where she was run over by the car about ten minutes after her mother last had seen her in the yard. *Held,* that there was evidence of due care on the part of the girl's mother.

At the trial of actions against a street railway company for the conscious suffering and death of a girl three years and four months of age, caused by her being run over by an electric street car of the defendant, it appeared that the accident happened on an ordinary village street, not thickly settled, where there was a single straight track. Two persons in a yard beside the track, who were engaged in cutting down a tree, testified that they saw the child standing near and warned her away, that she thereupon left the yard and went out upon the track on her way home, the car then being about one hundred and fifty feet away, and that there were no leaves on the track. One of the men testified that when he last saw the child, just before the accident, she was walking along the track with her back toward the car, and that the motorman, as he approached, was not looking at the track but at the men chopping the tree. The motorman testified that he saw the child approaching the track when he was from one hundred and fifty to two hundred feet away, and saw her on the track when he was one hundred and twenty-five feet away, and that then the car was running about four and a half miles an hour on a slight down grade, that he put on the brakes and reversed the car, but could not stop in time because the rails were slippery owing to the presence of leaves, that the brakes and reverse were in good order, and that by tests made by him after the accident he found that the car, when going four miles an hour on a grade, could be stopped in about twenty-five feet. *Held*, that the jury would have been warranted in believing the motorman's testimony as to the distance he was from the child when he first saw her and as to the distance within which the car under like conditions of grade and speed could have been stopped if the tracks were not slippery and the stopping gear were in good order, and the testimony of the men who were cutting the tree that there were no leaves on the track, and therefore would have been justified in finding that the brakes or reversing machinery of the car were out of order and that the defendant as a corporation was negligent; or that the jury might have disbelieved the motorman's testimony as to his effort to stop the car and have believed that the brakes and reversing machinery were in good order, that the car might have been stopped within twenty-five feet, that there were no leaves on the rails, and that the motorman saw the child with her back toward the car in time to prevent the accident, in which case they would have been warranted in finding the motorman guilty of gross negligence.

THREE ACTIONS OF TORT growing out of an accident which resulted in the death of the plaintiff's child, Doris, a little girl three years and four months of age. Two of the actions, in which the plaintiff sued as administrator, were brought to recover for the death and the conscious suffering of his intestate. The third action was brought by the father to recover for loss of services and for expenses due to the injury. Writs dated October 29, 1906.

In the Superior Court the three cases were tried together before *Lawton*, J. There was evidence tending to show the following facts:

Doris Ingraham, who was three years and four months of age, lived with her father and mother on Salem Street in the town of

Lynnfield.   There were two other children in the family, one old enough to be at school and the other a baby.   The father worked in Peabody, and was accustomed to leave home in the morning at six o'clock, and not to return until half-past six in the afternoon.   The mother did her own housework and took care of her children.

There was a single track of the defendant's railroad on Salem Street, over which it operated cars between North Saugus and Salem.   The cars ran each way once an hour.   The street was an ordinary village street, not thickly settled, and the tracks were on the opposite side of the street from the Ingraham house.

The accident happened at about eleven o'clock in the forenoon of October 7, 1906.   A little before eleven the mother was upstairs, sweeping a chamber, and Doris was in the same room, playing with the baby.   Just before eleven Doris looked out and saw a little boy named Newhall, four years and three months old, in the yard, and said to her mother that she was going down to play with him.   A little later the mother went downstairs, and, looking out of the window, saw Doris playing with the boy in the yard.   It was then five minutes of eleven.   The mother then sat down to rock her baby to sleep.   She did not see Doris leave the yard, and did not know she had left it until she was brought home after the accident, a little after eleven.   She repeatedly had instructed the child not to leave the yard, and had explained to her the dangers there were in the street from cars and automobiles.   She never had known of her going out into the street alone before.

The yard was surrounded by a wall on three sides, but had no fence or wall on the Salem Street side, where it was open to the street.   It appeared that the two children, Doris and the Newhall boy, left the yard and went down the street about eight hundred feet to a place where two men were cutting down an apple tree in a yard on the other side of the street.   They went through the gate, into this yard when the tree was nearly ready to fall, and one of the workmen told them to move out of the way.   Thereupon Doris went out of the gate and started back toward her home.   In doing so she went diagonally across the track, which was on that side of the street, about eight feet from

the wall. When she started across toward the track, the car was about one hundred and fifty feet away. The track was nearly straight and slightly down grade. The car was going slowly, — the motorman testified about four miles an hour. One of the men cutting the tree testified that the motorman was looking toward him and the tree, and that before the accident the child was walking with her back toward the approaching car.

The motorman testified that he saw the child in the gutter beside the track approaching the track, when he was from one hundred and fifty to two hundred feet away and saw her on the track when he was one hundred and twenty-five feet away from her and with his car going about four and a half miles an hour. He said he put on his brake and also attempted to stop this slowly moving car with the reverse, but failed to do so and ran over the child. There was evidence that, when the car was finally brought to a stop, the child was under the rear fender, that her body was then about eight or nine feet from where it was first struck and had been carried along that distance by the car. The car was from twenty to twenty-five feet long.

There was evidence of experiments made by the motorman after the accident, from which the jury properly might have inferred that with the brakes in good condition the car, when going four miles an hour on a slight grade, should have been stopped in about twenty-five feet. The motorman ascribed his failure to stop the car on this occasion to the fact that there were leaves on the track which rendered it slippery; but two witnesses for the plaintiff testified that there were no leaves on the track that day and no signs of their having been any. There was evidence that the motorman did not sound his gong. Although he testified that there was sand on the car which was intended to be used on slippery rails, he made no effort to use it.

At the close of the evidence, the defendant asked the judge to rule as follows :

" 1. There is no evidence which would warrant a finding that the defendant failed to provide proper brakes or other appliances for bringing its car to a stop.

" 2. There is no evidence which would warrant a finding that the defendant's servants were grossly negligent.

" 3. There is no evidence which would warrant a finding that the equipment of the defendant was in any respect defective.

" 4. Upon all the evidence the plaintiff is not entitled to recover."

The rulings were refused and a verdict was returned for the plaintiff in each case.  The defendant alleged exceptions.

*J. P. Sweeney,* for the defendant.

*G. L. Mayberry,* (*J. D. Upton* with him,) for the plaintiff.

LORING, J.  1. So far as due care on the part of the child's mother goes these cases come within *Hewitt* v. *Taunton Street Railway,* 167 Mass. 483, and not within the later case of *Cotter* v. *Lynn & Boston Railroad,* 180 Mass. 145.  The age of the child in *Hewitt* v. *Taunton Street Railway* was the same as that of the child in these cases.  The yard in question in that case had a fence " with gates opening " on one of the main thoroughfares in the city of Taunton, while in these cases the yard had no fence on the side next to Salem Street, but Salem Street was " like the ordinary village street, not thicky settled."  There both parents were in the house and one of them had looked at the child in the yard fifteen minutes before the accident, while in these cases the mother looked at the child in the yard not more than ten minutes before the accident happened.  In addition there were facts here which help the plaintiff that did not exist there.  The child in these cases was playing with another somewhat older child and had been " always " instructed by her mother not to leave the yard, an instruction which had been repeated on the morning of the accident and one which up to that time never had been disobeyed.  The principal difference between these cases and *Cotter* v. *Lynn & Boston Railroad* lies in the fact that in that case an hour to an hour and a half (in place of ten minutes) had elapsed between the time when the mother last looked to see if the child was still in the yard and the time of the accident; and there are some minor differences in addition between the two cases.  There was therefore evidence of due care on the part of the child's mother.

2. If the jury believed (1) the motorman's story as to what he did after he first saw the child one hundred and fifty to two hundred feet away, (2) his testimony that such a car as the car here in question under like conditions could be stopped in twenty-

five feet, and (3) the testimony of Cornell and Legrow that there were no leaves on the rails, the only explanation of the car not having come to a stop before it ran over the child was that the brakes or the machinery to start the reverse or both were out of order.   The motorman's story was that the car was going four miles an hour when he first saw the child one hundred and fifty to two hundred feet away; that he immediately began to put on his brakes and "the reverse" alternately and kept doing so, but that the car kept going four miles an hour until it ran over the child.   There was therefore evidence of negligence on the part of the corporation.

3. But the jury were not bound to believe the motorman's story that he put on the brake and the machinery to put on the "reverse" continuously after he discovered the child one hundred and fifty to two hundred feet away.   *Hankinson* v. *Lynn Gas & Electric Co.* 175 Mass. 271.   If they did not believe that part of his story and did believe (1) his testimony that the brake and the machinery to put on the reverse were in good order, (2) his testimony that the car in question, under the conditions which then obtained, could be stopped in twenty-five feet; (3) the testimony of Cornell and Legrow that there were no leaves on the rails; and (4) that the child (who was a very young one and so incapable of taking care of herself) was walking with her back toward the car, they were warranted in finding that he was guilty of gross negligence, if indeed any other conclusion is possible.

In all but two of the cases cited by the defendant in which it was held that there was no evidence of gross negligence (*Brennan* v. *Standard Oil Co.* 187 Mass. 376, *Manning* v. *Conway*, 192 Mass. 122, *Dimauro* v. *Linwood Street Railway*, 200 Mass. 147) the accident happened by the person killed unexpectedly putting himself in the place of danger.   There is nothing in the other two (*Pearlstein* v. *New York, New Haven, & Hartford Railroad*, 192 Mass. 20, *Lanci* v. *Boston Elevated Railway*, 197 Mass. 32) which helps the defendant.   There was therefore evidence of gross negligence on the part of the defendant's servants.

The entry must be

*Exceptions overruled.*