tiff and ran into the street, pursued by his companion, that the companion took the shovel from him and threw it under the defendant's wagon, that the plaintiff, pursuing, wept and, standing behind the team, was crying out for her shovel when the driver backed the team and she was run over. *Held*, that the questions, whether the plaintiff properly was upon the street unattended and, if so, whether at the time of the accident she was exercising the degree of care which under the circumstances a reasonably careful and prudent child of her age would have exercised, and if she was not properly upon the street unattended, whether there was negligence on the part of the sister in caring for her which should be imputed to her, were for the jury.

TORT, for personal injuries received by the plaintiff, who was three years and eight months of age when injured, and caused by a loaded wagon of the defendant running over her when it was being backed as stated in the opinion. Writ dated December 7, 1904.

In the Superior Court the case was tried before *Richardson*, J.

There was evidence tending to show that the plaintiff and her sister Catherine, eleven years of age, her brother Timothy and a playmate Walter Doyle, each six years of age, were playing at making mud pies in a yard about thirty feet square in front of their home, numbered 140 on Ward Street in Boston, on August 18, 1903; that the yard opened upon the public street and that there was no gate that could be closed; that her mother, having occasion to go to a store for groceries some five minutes' walk from her house, before starting directed the plaintiff's sister to care for the children and not to allow them to go on the street. In pursuance with this order of her mother, the plaintiff's sister sat on the front door steps of the house, caring for and watching over the children while the mother was away. Some five or six minutes after the mother had departed, the plaintiff asked her sister for a slice of bread and butter and she, seeing the children playing at their mud pies within three or four feet of the steps of the house and telling them to remain there until she returned, went into the house and got the bread and butter, and was absent about three minutes. Hardly had the door closed behind her, when the plaintiff's brother seized her shovel and ran from the yard into the street. He was pursued by Walter Doyle, who took the shovel from him and threw it under the defendant's wagon. The plaintiff followed and stood behind the wagon, weeping and crying out, " Give me that shovel." Other facts are stated in the opinion.

At the close of the evidence for the plaintiff, the presiding judge ordered a verdict for the defendant; and the plaintiff alleged exceptions.

The case was argued at the bar in March, 1911, before *Knowlton*, C. J., *Hammond*, *Braley*, *Sheldon*, & *Rugg*, JJ., and afterwards was submitted on briefs to all the justices.

*S. A. Fuller*, for the plaintiff.

*J. Lowell & J. A. Lowell*, for the defendant.

BRALEY, J. The defendant having obtained a verdict by order of the trial court at the close of the plaintiff's evidence, the questions presented by the exceptions are, whether there was any evidence for the jury of the defendant's negligence, or of her due care.

The accident happened on a public way, while the defendant's servant, in charge of a team loaded with material to be delivered in an adjoining lot, was waiting for an opportunity to drive through a passageway on to the lot and unload. While the evidence for the plaintiff is meagre and somewhat contradictory, the jury could have found that he knew of the presence of children, who were at play around or near the wagon upon which some of them had climbed, and that if he had looked carefully before backing around he would have seen that the plaintiff had joined or was near the group. The team ahead of him having passed in, unloaded, and returned, the exceptions state, that "before he got on his team" he ordered the children off, and the jury further could have found that, without looking to the rear, he then backed the wagon partly around for the purpose of turning into the passageway or lot, and ran over the plaintiff. It is no defense as between the parties, that the plaintiff was not a traveller, and, knowing of the presence of children, the driver in making the movement was called upon to use ordinary care not to endanger the plaintiff. In the opinion of a majority of the court, the question of the defendant's negligence was for the jury. *Slattery* v. *Lawrence Ice Co.* 190 Mass. 79. *Jaehnig* v. *J. G. & B. S. Ferguson Co.* 197 Mass. 364.

If the jury were satisfied that the plaintiff, who was three years and eight months old when injured, was capable of going upon the street unattended, the degree of care required of her was that of a reasonably careful and prudent child of her age.

It could not have been ruled as matter of law, that she should have anticipated that the team might be backed against her, as she stood in the street crying for a toy shovel which a playmate had taken from her and thrown under the wagon. *Sullivan* v. *Boston Elevated Railway*, 192 Mass. 37, 44, and cases there collected. If the jury determined that she was incapable of properly caring for herself, then the question of her sister's negligence, in whose care she had been placed temporarily by their mother, also was a question of fact, for reasons so fully stated in *Butler* v. *New York, New Haven, & Hartford Railroad*, 177 Mass. 191, and *Sullivan* v. *Boston Elevated Railway*, 192 Mass. 37, that it is unnecessary to repeat them or to recite the evidence from which they would have been justified in finding that her sister had not been unfaithful. See also *Ingraham* v. *Boston & Northern Street Railway*, 207 Mass. 451.

*Exceptions sustained.*