PATRICK C. TRAVERS, administrator, vs. BOSTON ELEVATED
RAILWAY COMPANY.

Suffolk.   January 15, 1914. — February 28, 1914.

Present: RUGG, C. J., LORING, BRALEY, SHELDON, & CROSBY, JJ.

*Negligence*, Street railway, Causing death.

It here was assumed that the question, whether a child five years and one month
of age, who was run over and killed by a street railway car, was capable of
exercising care for his own protection, was one of fact for the jury.

The requirement of St. 1906, c. 463, Part I, § 63, as amended by St. 1907, c. 392,
that, before there can be any recovery thereunder in an action against a cor-
poration operating a railroad or a street railway for causing the death of a
person not a passenger or an employee, it shall appear that such person was in
the exercise of due care, is satisfied, where the deceased person was so young as
to have been incapable of exercising care, if his parents exercised due dili-
gence in providing for his oversight by an elder sister of suitable age and
intelligence, who exercised due care in the performance of that duty.

TORT by the administrator of the estate of Joseph P. Travers,
to recover for his death and conscious suffering caused by his
being run over on September 22, 1910, by a street railway car of
the defendant near the corner of Quincy Street and Bowdoin
Street in that part of Boston called Dorchester.  Writ dated
August 18, 1911.

In the Superior Court the case was tried before *Aiken*, C. J.
There was evidence tending to show the following facts: At the
time of the accident, the plaintiff's intestate was five years and
one month of age, and both of his parents were living.  He had
been attending a parochial school near the place of the accident
for about a week.  He had three sisters, Catherine, Helen and
Mary, thirteen, eleven and nine years of age respectively, and a
brother James, seven years of age.  His mother was confined to
her bed by sickness and had put him in charge of his two older
sisters to go to and from school.  Both could accompany him to
the school, but only Helen could return with him because at the
time of his return Catherine was attending to other duties in a
church near by.

Bowdoin Street runs about north and south.  Quincy Street

runs about east and west and enters, but does not cross, Bowdoin Street from the west. At the southwesterly corner of the streets was a drug store. About one hundred feet south of the drug store was the parochial school which the children attended, Joseph being in the first grade and Helen in the fifth. Opposite the school was a convent. It was customary, in leaving the school, for the third, second, first and fifth grades to march out in that order, to cross the street directly in front of the school in charge of the teachers, and then for the children, upon the teachers leaving them to enter the convent, to turn to their left and march northerly on Bowdoin Street to a tree which was directly opposite the drug store previously described, and there to break ranks. It had been arranged and was customary for Joseph to wait at this tree for his sister Helen.

On the day of the accident, the first, Joseph's, grade marched out first, and, while waiting for his sister Helen, he crossed and recrossed the street and was run into by a north bound car.

At the close of the evidence the defendant asked for general rulings that on all the evidence the plaintiff could not recover, and for the following specific rulings:

"3. That under . . . the counts for death, the plaintiff must show that the plaintiff's intestate was himself actively and actually in the exercise of due care or diligence.

"4. That there is no sufficient affirmative evidence of due care or diligence on the part of the plaintiff's intestate.

"5. That under all the evidence the plaintiff's intestate was capable of exercising some care for his own safety.

"6. That, on the other hand, if the plaintiff's intestate was incapable of exercising care for his own safety, then it must be shown that the person in whose charge he was placed by his parents, namely, his sister Helen, was in the exercise of due care in taking care of him.

"7. And if Helen was not present at the time when the boy was alone, crossing and recrossing the street, then, there is no evidence of her due care.

"8. If the plaintiff's intestate was incapable of exercising any care, then the fact that he was alone, crossing and recrossing the street, is *prima facie* evidence of negligence on the part of those in charge of him."

The rulings were refused, subject to exceptions by the defendant.

The defendant also excepted to the following portions of the charge to the jury:

"If Joseph was of sufficient intelligence to properly be allowed to be on the street at the time this accident occurred, then he is responsible in the matter of conduct or in the matter or due care for such behavior as would reasonably be expected of a child of his age. If he behaved with the care that you would reasonably expect of a child of his years, although it was not care that you would expect of an adult, he was acting with due care. If he failed to exercise the prudence or the caution that you would reasonably expect of a child of his age then he was not acting with due care. . . .

"If Joseph was not of sufficient intelligence to be safely permitted upon the street at this time, then . . . his parents are responsible for him, and that duty on the part of a parent may be discharged by putting the younger child in the care of older children, or an older child or children. . . . If Helen and Catherine, one or both of them, were proper custodians for the child, and the child ought to have had some one to take care of him, then, . . . the parents have done their duty, and if Helen or Catherine conducted themselves as children of their age should reasonably do there is due care. If there was a failure on the part of one or both of them that caused the injury then there is a lack of due care. . . .

"If Joseph was not able to take care of himself then it was the duty of the parents to see that he had suitable oversight in going to school, and if Helen or Catherine, singly or in conjunction, were insufficient, were not suitable persons to care for their younger brother, and through their failure to do so he was hurt, there is not due care. If they were suitable persons and they failed to exercise that oversight that they should of Joseph, and that is the reason in part why Joseph was hurt, there is not due care. If the children were suitable in years and in intelligence to care for their brother and they behaved reasonably in that respect, . . . the obligation of exercising due care is sustained. . . .

"All of the considerations that are presented by the evidence in this case you will have in mind — that the children came out at different intervals, that the mother had or ought to have had

some knowledge of the way the classes departed from the school, and your inquiry will be whether the parents discharged the duty that was upon them to look after a child that was of insufficient intelligence to look after himself. That duty would be discharged by putting the child in the care of an older child who had intelligence enough to do it. If that child performed the duty due care would be sustained — due care would be exercised. If there was a failure on the part of the parents by reason of the selection of an improper person, or a failure by reason of the child to act as a child reasonably should — and I am now speaking of Helen — then there is a lack of due care."

The jury found for the plaintiff in the sum of $2,000 for the death and in the sum of $200 for the conscious suffering; and the defendant alleged exceptions.

*W. E. Monk,* for the defendant.

*C. H. Donahue, (W. P. Meehan* with him,) for the plaintiff.

SHELDON, J. The case was submitted to the jury under proper instructions, and the requests of the defendant for rulings were correctly dealt with. The question of the care required of the plaintiff's intestate, if he was of sufficient development and intelligence to be allowed to go upon the street alone, was left to the jury with accurate instructions. The duty of his parents, if he was not able to take care of himself, was to provide suitable oversight for him, and it was properly left to the jury to say whether this was done. The rule stated in *Hudson* v. *Lynn & Boston Railroad,* 185 Mass. 510, and *Bothwell* v. *Boston Elevated Railway,* 215 Mass. 467, that in order to recover against a street railway company for the death of a person not a passenger, it must be proved that the deceased was giving reasonably active and intelligent attention to his own safety, and that a negative and passive freedom from fault on his part is not enough, was not intended to extend to the case of a child who is too young to take proper care of himself. The right to recover for the death of such a child depends upon the diligence exercised by his parents or those who are charged with the duty of looking out for his safety. In the first of the two cases cited above, the deceased was in a stupor, in the second he was in a state of overpowering fright, and neither condition was due to any fault or negligence of the defendant, and by reason thereof each one was rendered unable to care for

himself. Each of those two decedents, the one being an adult and the other a boy nine years of age, was considered to be ordinarily able to look out for himself; each was under a duty to do so. The case of a child too young to be entrusted to his own care is wholly different.

It was for the jury to say whether the boy, if he was of sufficient capacity to be allowed to go alone upon the street, was exercising that degree of diligence which reasonably could be required from one of his age. If he was too young for this, it was for the jury to say whether his parents actually had exercised due diligence in providing for him the oversight of his elder sisters. If the arrangement which they had made for the purpose temporarily failed of effect without negligence on their part, this was not necessarily fatal to the maintenance of the action.

What has been stated is supported by many of our decisions. It is enough to cite a few of them. *Commonwealth* v. *Metropolitan Railroad,* 107 Mass. 236. *Powers* v. *Quincy & Boston Street Railway,* 163 Mass. 5. *Hewitt* v. *Taunton Street Railway,* 167 Mass. 483. *Ingraham* v. *Boston & Northern Street Railway,* 207 Mass. 451. In all of these cases (and many others might have been cited to the same effect), the defendant was held liable; in all of them there ought not to have been any recovery if the present defendant's argument now were upheld.

We do not deem it necessary to go over the case in detail. What we have said disposes of the exceptions which have been argued.

*Exceptions overruled.*