ELIZABETH GRANT, Admx.,

*vs.*

BANGOR RAILWAY AND ELECTRIC COMPANY.

Penobscot.   Opinion May 9, 1912.

*Street Railways.  Injury to Pedestrian.  Negligence of Motorman.  Parent.
and Child.   Injury to Child.   Contributory Negligence.
Capacity of Child.   Care of Child.*

In an action against a street railway company for death of the plaintiff's child by being struck by a street car, evidence *held* to show that the motorman failed to exercise that degree of care which the situation demanded, especially in failing to reduce the speed of the car and having it under control as demanded by the exigencies of the occasion, and that it did not show any want of due care on the part of the child.

Though the court can say, as a matter of law, that there is an age at which a child cannot exercise any care under the circumstances, and also an age when the court can say, as a matter of law, that a child is capable of exercising some care under the circumstances, between these limits are the ages where it is for the jury to determine the capacity of the child to exercise care for itself.

However young a child may be, the negligence imputable to the parent or custodian from the mere presence of the unattended child in the place of danger is only prima facie and not conclusive.

The facts and circumstances in explanation of a child's presence unattended in a place of danger are always to be considered.   No hard and fast rules as to the care of children can be laid down and the financial condition of the family and the other cares devolving upon the parents are not to be ignored.

Where a mother was obliged to go to a nearby market for something for supper and left her five year old child with a nine year old daughter on the sidewalk, telling the latter to watch the child which she promised to do, and the young child was struck by a street car during her absence, *held* that the mother was not guilty of contributory negligence.

On motion by defendant.   Overruled.

Action on the case by the plaintiff to recover damages at common law for personal injuries sustained by her intestate, who was her child five years and three months old, by reason of being struck and run over by a street car of the defendant and which resulted in the death of the child a few hours after the injury.   The declaration in the writ alleges that the deceased child "endured great conscious mental and physical suffering from the effects of her said injuries for a long period of time, to wit, from the time of receiving her said injuries until the time of her death," and the evidence shows that the child was conscious after her injuries and underwent great suffering.   Verdict for plaintiff for $1508.   The defendant filed a general motion for a new trial.

The case is stated in the opinion.

*Fellows & Fellows,* for plaintiff.

*E. C. Ryder,* for defendant.

SITTING:  WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

CORNISH, J.   This is an action on the case brought by the plaintiff, as administratrix of the estate of Ida Bernice Grant, her deceased child five years and three months old, to recover damages at common law for injuries sustained by her intestate by reason of being struck and run over by a car of the defendant on Harlow Street in the city of Bangor, about 5.30 P. M., July 13, 1910, from which injuries the child died a few hours later.   The case is before the Law Court on defendant's motion to set aside the verdict as against the evidence.

The following facts are fairly established:

Mrs. Grant lived on the second floor of the National block on the corner of Harlow and Franklin Streets.   Harlow Street runs in a general northerly and southerly direction, and the car in question

was on its regular route, having come into Harlow Street from Cumberland Street at a point 482 feet north of the place of the accident and was passing southerly along the center of Harlow Street toward Central Street. Harlow Street is one of the busy streets of the city and the surroundings are such that motormen have special instructions not to run too fast on that street. The accident occurred about five feet below the Prospect Street crossing, and in front of the playground in the yard of the High School. At this point the city was excavating a reservoir, so that the entire sidewalk and a portion of the street itself was blocked by the excavated earth, leaving a space of only two or three feet between the outside of this pile of earth and the track of the defendant. This narrow space was the walk in use. Cumberland Street makes a sharp descent into Harlow Street and from the junction there is a continuous down grade of two and one-half per cent on Harlow Street past the place of accident toward Central Street. The motorman had been in the employ of the defendant since May 30th, 1910, was a spare hand and had been on this run three days.

Mrs. Grant, the mother, was obliged to go to a nearby market to purchase something for supper and left her five year old child for a few minutes on the sidewalk with the injunction to stay there which the child promised to do. At the same time she called her older daughter, a girl of nine, and told her to watch her sister, which she also promised to do. The mother was gone only about ten minutes but the accident happened before her return.

It appears that the child did not remain where she was left but walked along the sidewalk to the excavation and was seen standing by the reservoir about five or six feet from the track and eight feet from the cross walk on Prospect Street. She was looking into the reservoir with her back toward the approaching car, then, in the language of an eye witness called by the defendant, "she started across the track slowly until she was about in the middle of the track, when she turned slightly and she saw the car, and she didn't know whether to continue and go across or come back; she seemed kind of dazed, and the car struck her on the forehead and knocked her down and run over her."

It further appears from the motorman's own testimony that as soon as he turned into Harlow Street from Cumberland Street, he saw the child standing near the track by the reservoir and he

watched her as she stood there all the time he was coming down the street his vision being unobstructed; that he was coasting along Harlow Street with the power shut off, that the car was moving in his judgment about seven or eight miles an hour, that he did not apply the brakes until he saw the child start to cross the street, that he was then about a car length or thirty feet distant, that he immediately put on the brake and reversed the power, but it was too late. The car struck the little girl while she was in the center of the track and ran over her. Reversing the power caused a fuse to blow out, which locked the wheels and the car slid a distance of two and a half car's length or seventy-five feet before it stopped. The rail was wet and muddy owing to the work that was going on.

Witnesses for the plaintiff made the speed much greater than seven or eight miles an hour, some calling it fifteen or twenty and others simply stating that the car was going very fast, so fast as it came out of Cumberland Street and continued its course down Harlow Street as to attract their attention. The distance which the car went after the accident would seem to confirm this view, the motorman making it 75 feet, other witnesses more than 100.

Such is the picture, and as is usual in this class of cases, where it is fairly drawn, the legal conclusions that follow are quite apparent.

1. *Defendant's Negligence.*

From the above statement of facts it is difficult to resist the conclusion that the motorman failed to exercise that degree of prudent and watchful care which the situation demanded especially in using that degree of precaution in reducing the speed of the car and having it under his immediate control which the exigencies required.

The speed at which a car may be properly run and the kind of control which should be exercised over it must depend to some extent upon the surrounding circumstances and the situation ahead. No specific rate can be arbitrarily fixed. A speed of thirteen miles an hour on Upper Main Street in Lewiston under the there existing conditions was not considered necessarily dangerous and reckless in *Malia* v. *St. Ry. Co.*, 107 Maine, 95, while a much less rate was demanded where the track was near the sidewalk and private driveways were in frequent use in *Butler* v. *Railway Co.*, 99 Maine, 149, or in approaching public street junctions as in *Denis* v. *Railway Co.*,

104 Maine, 39.   A similar degree of caution should be observed in passing public playgrounds or where children are in the street. "The driver of a horse car in a street where there are children may well be required to manage his car with reference to all the risks that may reasonably be expected, and among these may be reckoned the risks arising from the heedlessness and indiscretion of children in the street." *Collins* v. *So. Boston R. R.,* 142 Mass., 301.

The motorman, in the case at bar, admits that he saw this little girl as she was standing only five or six feet from the track when he was nearly five hundred feet away.   She stood there facing away from the car and apparently unaware of its approach.   With the indiscretion of childhood she might be expected to step across the track, at least it might not be unexpected.   Yet with this combination facing him, a street crossing, a nearby playground, an obstruction on one side of the street and a little child perilously near the track and apparently oblivious of the approaching car, the motorman maintained his speed at such a rate and to within such close proximity that when the child turned and attempted to walk across the tracks he could not sufficiently control the car to avoid collision.   His efforts then were too late.   And yet, it was not the unexpected, but what might reasonably be expected, which happened, and the reasonably prudent motorman would have foreseen it and guarded against it, either by stopping the car completely or by having it under such control that he could stop it almost instantaneously.   This man did neither.

Nor does the alleged wet and slippery condition of the rails afford sufficient excuse.   If that condition existed it was known to no one better than to the man who had been running on this same circuit during the past three days while work upon the reservoir had been in progress, and therefore greater care was imposed upon him to counteract that condition by extra precautions, and by running his car at a lower speed and under better control than usual.

Upon the question of defendant's negligence, we think the verdict of the jury cannot be said to be manifestly wrong.

2.   *Contributory negligence on the part of the mother.*

The second point raised in defence is that no recovery can be had because the child was negligently permitted by her mother to be upon the street unattended at the time of the accident.   The standard of age at which a child is chargeable with parental negligence

cannot be absolutely fixed, although within certain limits it may be approximately determined. "There doubtless is an age where the court can say as a matter of law that a child cannot exercise any care under any circumstances. There is also an age where the court can say as matter of law that a minor is capable of exercising some care under circumstances like those in question. . . . The limits of these two classes are not settled by our decisions." *Sullivan* v. *Boston Elevated Ry.*, 192 Mass., 37, p. 43.

The test of course is the capacity of the child to exercise care for itself. In the application of this test it has been held that a child of nineteen months was of such tender age as to be incapable of exercising such care as a matter of law, *Gibbons* v. *Williams*, 135 Mass., 333; so a child of twenty months, *Grant* v. *Fitchburg*, 160 Mass., 16; of two years, *Wright* v. *Railroad Co.*, 4 Allen, 283; of two years and four months, *Callahan* v. *Bean,* 9 Allen, 401; of three years and ten months, *Cotter* v. *R. R. Co.*, 180 Mass.; 145.

On the other hand such capacity has been held to be possessed by a child of nine years, *Brown* v. *Ry. Co.*, 58 Maine, 384; of ten, *Colomb* v. *Ry. Co.*, 100 Maine, 418; and of twelve, *Gleason* v. *Smith,* 180 Mass., 6. Between these two extremes lies a zone with shadowy and indefinite boundaries.

But however young the child may be, the negligence imputable to the parent or custodian from the mere presence of the unattended child in the place of danger is only prima facie and not conclusive. *Gibbons* v. *Williams, Grant* v. *Fitchburg, Wright* v. *R. R. Co., Callahan* v. *Bean,* supra, and *O'Brion* v. *McGlinchy,* 68 Maine, 552.

The facts and circumstances in explanation of the child's presence are always to be considered. No hard and fast rules as to the care of children can be laid down and the financial condition of the family, and the other cares devolving upon the parents are not to be ignored.

As is said in Thompson on Neg. Vol. 1, p. 306 in discussing this question, "Small children have a right to light, air and exercise and the children of the poor cannot be constantly watched by their parents."

In the case at bar, the family, which was apparently in limited circumstances, consisted of the mother and two girls, aged five and, nine, and they occupied a second story tenement. The mother had been calling upon a friend the afternoon of the accident, having the

younger child with her and leaving the older at home. Just as she reached home she found that she was obliged to go to a market a short distance off in order to obtain something for supper. Instead of taking the little child with her again, she left her in the care of the nine year old sister with strict instructions as to watchfulness. She expected to be and was gone less than ten minutes. To hold that under these circumstances the mother did not use that degree of care which an ordinarily prudent woman in her station in life and under the same circumstances would exercise, is too severe, and such has been the tendency of the decisions, where the question has been held to be for the jury and a verdict in favor of the plaintiff has been allowed to stand.

To illustrate:

A mother allowing a child two years and ten months old to go with her sister, a child of five years and four months, to play in a vacant lot at the side of the house, the lot being unfenced and unguarded and fronting on a public street, *McNeil* v. *Boston Ice Co.*, 173 Mass., 570.

The mother of a child three years old, having hung out the clothes in the yard, while the child was playing therein, went into the house to set the table for dinner and left the child playing alone inside an open gateway leading into the street, *Creed* v. *Kendall*, 156 Mass., 291.

A boy between four and a half and five years old was permitted, by a sick mother, who had two younger children to play about the room, but while she was asleep he escaped from the house, first to a neighbors and then to the street, *Slattery* v. *O'Connell*, 153 Mass., 94. A boy of four was permitted to walk in the streets of a city under the care of his sister who was nearly eleven, *Collins* v. *R. R. Co.*, 142 Mass., 301. Of like effect are *Hewitt* v. *Taunton Street Ry. Co.*, 167 Mass., 483, *Ingraham* v. *Street Ry.*, 207 Mass., 451.

We have not overlooked a line of decisions, many of which are cited by the learned counsel for the defendant, in which the court held that the parent or custodian did not exercise reasonable precaution in the care of the child. Such are *Callahan* v. *Bean*, 9 Allen, 401; *Casey* v. *Smith*, 152 Mass., 294; *Grant* v. *Fitchburg*, 160 Mass., 16; *Cotter* v. *R. R. Co.*, 180 Mass., 145. But a careful study of the facts in these cases differentiates them from the cases before cited. It is simply a question as to whether the facts of a

particular case place it below or above the required standard. The Massachusetts court recognizes the distinction which is one of fact and makes each case as it is brought up fall into one class or the other as the facts may dictate. Applying the same rule here we have no hesitancy in saying that the case at bar belongs to the class where the jury were justified in finding that the mother exercised reasonable care.

3.   *Want of due care on the part of the child.*

This question arises only on the assumption that the intestate was of sufficient age and intelligence to be permitted to go alone upon the street on which electric cars were frequently running. If she had not attained that age and intelligence and there was no want of due care on the part of the mother, then this point is not involved.

Here, again there is a zone between two limits which cannot be exactly fixed, *Sullivan* v. *Boston Elevated Ry.*, 192 Mass., 37, supra.

If the jury found in the case at bar that the intestate was capable of exercising care, then they must have found that she used that degree of care which the ordinarily prudent child of her age would have exercised under the same circumstances, and that finding we are not disposed to disturb.

It appears that she was standing near the track looking into the excavation, that others were about, that she was facing away from the car and apparently unaware of its approach. There may have been a reason for this. Perhaps the gong was not sounded. The motorman testified that he used it, but many of the witnesses both on and off the car and including some for the defendant as well as the plaintiff, did not hear it. Probably she did not. Under these conditions she walked towards and over the track. She did not dart across quickly, as if to dodge ahead of the car, but walked slowly with her head down. The only want of care which could be attributable to her would be her failure to look up the line to see if a car was coming. That is all that could be expected of an adult, and the law is not so unreasonable as to require so high a degree of watchfulness on the part of a child of five as of a mature man. The measure of care required was that degree or extent which ordinarily prudent children of her age and intelligence are accustomed to use under like circumstances. That measure the jury have found she fulfilled.

The cases cited by the defendant, are clearly distinguishable because of their peculiar facts. In some the child was more mature, as a child of eight years in *Morey* v. *St. Ry.* 171 Mass., 164; of nine in *Young* v. *Small,* 188 Mass., 4, and of ten in *Colomb* v. *St. Ry.,* 100 Maine, 418; while in *Hayes* v. *Norcross,* 162 Mass., 546, and *Murphy* v. *Boston Elevated,* 188 Mass., 8, the children though only between five and six years of age were on the street by the permission of the parents and so conducted themselves as to be considered reckless even for that age in attempting to run across the street and to dodge a closely approaching car in one case and a team in the other. The case at bar more nearly resembles *Lynch* v. *Smith,* 104 Mass., 52 and *Sullivan* v. *Ry. Co.,* 192 Mass., 37, supra.

It is the opinion of the court that the jury were warranted in their findings upon all branches of the case and the entry must therefore be,

*Motion overruled.*