JOHN GRAVEL, PRO AMI *vs*. DEMARA LeBLANC.

Oxford.     Opinion October 26, 1932.

*Albert Beliveau,* for plaintiff.

*Locke, Perkins & Williamson,* for defendant.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

DUNN, J. This is an action of tort for personal injuries. At the close of the evidence, defendant's counsel made a motion for a directed verdict, upon the ground that a verdict for the plaintiff would be contrary to the evidence. *Jewell* v. *Gagne,* 82 Me., 430, 19 A., 917; *Moore* v. *McKenney,* 83 Me., 80, 21 A., 749; *Royal* v. *Bar Harbor, etc., Co.,* 114 Me., 220, 95 A., 945; *Weed* v. *Clark,* 118 Me., 466, 109 A., 8. Upon denial of the motion, exception was taken.

After the jury had reported a verdict for the plaintiff, counsel for defendant filed a general motion for a new trial. As argued, the questions in the case are raised alike upon the exception and the motion. The case will be considered on the bill of exceptions. As decision shall go on that, so will decision go on the motion for a new trial.

On Sunday evening, May 17, 1931 (around six o'clock, Standard Time, and before it was dark), defendant was driving his automobile, a Pontiac of the coach type, upon the main highway in Mexico, Maine. This highway is a State road, with a tarred surface twenty feet wide. Its general direction is north and south.

The automobile, running southward, struck and injured the plaintiff, a boy four years old (lacking eight days), who came into the road from the west side. The child sued through his next friend, to recover the damages to which he claimed to be entitled by reason of the accident. The trial court admitted the mother to prosecute in substitution for the original prochein ami.

The declaration, as amended, contained two counts charging actionable negligence on the part of the defendant.

The complaint of the first count is that defendant drove his automobile at an excessive and unreasonable rate of speed; of the second, that he operated the machine recklessly and in such a manner as to endanger the person of the plaintiff. The plea was the general issue. Specifications were not required.

Evidence on behalf of the plaintiff was to the effect that defendant admitted, shortly after the accident, that when he was at a point which measures farther than two hundred feet (straight as indicated on a plan) from the scene of the collision, he saw the plaintiff, whom he identified as a child, standing on the street side running board of a parked Ford car. How the boy was facing is not in evidence. Apparently no person was in the car.

The person who had parked the Ford testified to having left it on the right-hand side of the road, parallel thereto, two feet off the black portion, and headed toward Dixfield. Defendant was proceeding in the direction of that town.

The child (to recur to the evidence of the attributed admission) remained on the running board until he unexpectedly appeared in the road, in front of defendant's car.

Further tendency of plaintiff's evidence was that defendant said an automobile approaching on his left precluded turning his machine to that side of the road, and that he could not stop "because he was going too fast."

There was evidence that after knocking plaintiff down, defendant's automobile dragged the child one hundred and thirty feet, and that, upon his becoming disentangled and left in a heap in the road, it ran one hundred and seventeen feet farther before being brought to a stop. One of the witnesses testified to measuring from a point opposite the parked Ford, to where he saw the child's mother pick him up; and thence to where defendant's car was stopped.

Defendant, testifying in his own behalf, denied making any admission. He witnessed that he was not driving faster than thirty-five miles an hour, on an open country road (a rate of speed at which the statutes do not presume negligence); that noticing the Ford, parked, partly in the highway, he blew his horn—as was his

custom on nearing a parked car — the horn being sounded, in this instance, some fifteen feet away; that plaintiff darted in front of defendant's automobile, two feet ahead, so suddenly that it was impossible to avoid hitting him. Defendant stated that immediately upon impact he applied his foot brake and stopped his car within thirty feet. His father-in-law, who had been riding in the seat beside him, said while on the witness stand, that he had paced the distance, thinking it might be useful, and that it was ten paces. Both attested that the plaintiff was struck and knocked down, but not dragged, or carried beyond two or three feet.

Further testimony for the defense is that after stopping his car, defendant went back and picked up plaintiff; that he was joined at the car by the boy's mother, who got into it, defendant thereupon driving to where plaintiff's witnesses place his car, for the purpose of turning, to go to the hospital.

The defense insists that plaintiff did not make out a case. Counsel argue that the tendency of the evidence does not show that defendant fell short of the exercise of the care and prudence that the law required, or that was demanded for the safety of the public.

Negligence has been defined to be the want of ordinary care, that is, the want of such care as a reasonably prudent and careful man, mindful of his own conduct and the rights and safety of others, would exercise in a similar situation, or under like circumstances. The terms "ordinary care" and "reasonable prudence," as applied to the actions and affairs of men, have only a relative significance, depending upon the incidents and surroundings of the particular case. They defy arbitrary definition. What might be reasonable care under one condition of things might be negligence under another. In other words, the care which ordinarily prudent and careful persons take is commensurate with the necessity for care and the dangers of the situation.

In the instant case, there was conflict in the testimony; yet there was evidence, direct and indirect, sufficient to create, in the estimation of the jury, reasonable probabilities favorable to the plaintiff. Where the evidence admits of only one logical inference, the question is one of law; where reasonable men might differ as to the inferences that could be drawn, the question is one of fact.

*Young* v. *Chandler,* 102 Me., 251, 66 A., 539; *Hartford Fire Insurance Co.* v. *Stevens,* 123 Me., 368, 123 A., 38; *Savage* v. *North Anson, etc., Co.,* 124 Me., 1, 124 A., 721; *Collins* v. *Wellman,* 129 Me., 263, 151 A., 422.

The jury could have found from the evidence (some introduced by plaintiff and some by defendant) that defendant saw the plaintiff on the running board of the Ford, two hundred feet away, and recognized him to be a child; that the near wheels of the Ford were at the edge of the road; and that when within fifteen feet of the parked automobile, defendant sounded his horn. Sounding a warning signal — where there is no apparent necessity for such warning, and the obligation to give such signal is not imposed by statute — does not constitute negligence. This, however, might present a jury question, in view of the claimed admission by defendant, of knowledge of the presence of the plaintiff on the running board. Defendant, it was in evidence, after "tooting his horn," continued at unslackened speed, in the center, or to the right of the center of the highway. Defendant's express statement, on the stand, was that plaintiff suddenly and unexpectedly appeared in the road, two feet in front of defendant's right mud guard, by jumping from the running board of the stationary vehicle, or passing in front of it; that no other car than defendant's was occupying the road; that defendant did not, when plaintiff was first seen, nor afterward to the time of the accident, change the course of his car.

The jury could validly deduce from the evidence, that though plaintiff, when defendant first saw him, was in the road, and though defendant might not have had space to stop his machine, still he might have swerved it to the left, so as to avoid collision. Unlike a street car, the automobile was not moving on a fixed track.

The trial judge ruled, as a matter of law, that plaintiff was *non sui juris.* The ruling was not prejudicial to the plaintiff, and defendant did not except. Such was the stage of the evidence when defendant moved the direction of a verdict. The question then was whether, on the disputed issues, as the record stood, the case was one for the jury. The issue on the bill of exceptions to the ruling refusing to direct a verdict is not inclusive of the capacity of the

plaintiff to be contributorily negligent. Consideration of the bill must be upon the hypothesis that the plaintiff, being incapable of observing and avoiding danger, was non-negligent.

The plaintiff having been, as the case was tried, too young to care for himself, he can recover only by showing the due care of the custodian. *Gibbons* v. *Williams*, 135 Mass., 333; *Casey* v. *Smith*, 152 Mass., 294, 25 N. E., 734; *Garabedian* v. *Worcester, etc., Co.*, 225 Mass., 65, 113 N. E., 780. See, to the same effect, *Grant* v. *Bangor, etc., Co.*, 109 Me., 133, 83 A., 121; *Morgan* v. *Aroostook Valley, etc., Co.*, 115 Me., 171, 98 A., 628.

The parents of a child not capable of exercising care for his own safety, must exercise reasonable care for the child's protection. Failure in such regard, that is, negligence of the parents, if contributory to injury, is chargeable to the child, and constitutes a bar to recovery. *Brown* v. *European, etc., Co.*, 58 Me., 384; *Leslie* v. *Lewiston*, 62 Me., 468; *O'Brien* v. *McGlinchy*, 68 Me., 552; *Hasty* v. *Cumberland County, etc., Co.*, 125 Me., 229, 132 A., 521. See, also, *Grant* v. *Bangor, etc., Co.*, supra; *Morgan* v. *Aroostook Valley, etc., Co.*, supra.

On the issue of imputability, the question is not whether, in consequence of the incapacity of the plaintiff, a collision occurred which the defendant, as a reasonably prudent driver, exercising ordinary care, could not avoid. The question is whether the jury could consistently have been permitted to find plaintiff's custodian free from any negligence which, in a legal sense, contributed to his injury.

In other days, before the public ways were subjected to the widespread use of motors of every sort, the question was held of fact, and not of law, whether it was negligence on the part of parents, to let their child, three and a half years old, be upon a street unattended. *O'Brien* v. *McGlinchy*, supra.

The defendant contends that this court should decide, as a matter of law, on the exception to the refusal for the direction of a verdict, that, as a matter of fact, in view of all the testimony, the plaintiff's mother negligently left him without surveillance; and that such negligence contributed, in legal contemplation, to the unfortunate disaster.

The evidence was, briefly, this:

Plaintiff's father was ill in a hospital. His family consisted of his wife, and three children, aged eight, five, and four years, respectively (plaintiff being the youngest). They had always lived with the paternal grandparents, whose house was on the east side of the road, the front piazza being more than twenty-five feet back from the traveled part.

The usual employment of the father is stated in the brief for the defendant to have been that of a mill operative. Inference would be warranted, from the evidence, that the family was in comparatively moderate circumstances; and that the mother, aside from caring for her children, had much to do about the home.

In the afternoon of the day of the accident, the uncle of the children, and his wife (she who had parked the Ford machine) came to the house, staying to supper. The meal was served about half past five o'clock (Standard Time). On completing their meal, the two older children left the table, and went out of doors. These children were accustomed to play, with other children, in a tent across the road.

Next, plaintiff left the table, going out of the back door (sixty feet, at least, from the nearest street line)—his mother did not see where.

The mother and aunt testify that the next they knew, one of the older children shrieked: "Little Johnny (plaintiff) has been killed."

The mere fact that a child, *non sui juris*, is unattended in a street, frequently traversed as was this road, by motor vehicles, might be said to be prima facie evidence of neglect on the part of the parents. Prima facie evidence, as the expression itself connotes, is not conclusive, but explainable and rebuttable, however young the child might be. *Grant* v. *Bangor, etc., Co.*, supra; *Creed* v. *Kendall*, 156 Mass., 291, 31 N. E., 6.

Conceding, without deciding, negligence on the mother's part, had she known, or if she ought to have known, that her son was at the automobile, or had gone to the tent, yet the evidence does not sustain such conclusion. She testified that the child never had been allowed to go to the tent, and that he had never played there.

She denied testimony by the defense that she had said the child was always playing in the street. This is practically the extent of her examination upon the point.

Parents are holden only to the exercise of reasonable care — and what is reasonable care depends upon the facts and circumstances, and sometimes, in part, even upon the financial condition of the family. *Morgan* v. *Aroostook Valley, etc., Co.*, supra. None of the cares devolving upon the parents are to be ignored. *Grant* v. *Bangor, etc., Co.*, supra. Small children need not be constantly watched. 1 Thompson on Negligence, 306.

The law recognizes, and does not disregard, individual variations in capacity among children of the same age. There must always be some border line where distinctions become illusory. *Camardo* v. *New York State Railways*, 247 N. Y., 111, 159 N. E., 879.

In the case at bar, the question of culpability of the mother, in permitting her four-year-old son, who is described as bright and intelligent, to be unwatched for a period which the jury could rightly have inferred, from the evidence, was but a few minutes, was not to be ruled as a matter of law, but was an open question of fact.

The test comes to this: Accepting the most favorable evidence for the plaintiff as true, and giving such evidence the most partial interpretation to him which it will bear, did the mother, as custodian of the plaintiff, exercise that degree of care which an ordinarily prudent person would have exercised in a like situation? *McGeary* v. *Eastern Railroad Co.*, 135 Mass., 363; *Coughlin* v. *Bradbury*, 109 Me., 571, 85 A., 294.

*Exception overruled.*
*Motion overruled.*