**Caleb LASH, et al., Plaintiffs, Appellants,**

v.

**Richard CUTTS, Defendant, Appellee.**

**No. 90–1743.**

United States Court of Appeals, First Circuit.

Heard April 1, 1991.

Decided Sept. 5, 1991.

William H. Welte with whom Joseph M. Cloutier & Associates, Rockport, Me., was on brief, for plaintiffs, appellants.

James Brett Main with whom Platz & Thompson, P.A., Lewiston, Me., was on brief, for defendant, appellee.

Before CAMPBELL, SELYA and CYR, Circuit Judges.

CYR, Circuit Judge.

On the morning of June 1, 1986, five-year-old Caleb Lash asked his mother if he could accompany a neighbor's son to a school playground located two house lots from the Lash residence in Waldoboro, Maine. Caleb previously had not been allowed to leave home except under the supervision of an older family member. Mrs. Lash later received a telephone call from the neighbor, informing her that Caleb was not at the playground but was visiting at the neighbor's house. Caleb was seriously injured when he rode his tricycle down the steep driveway leading from the neighbor's house into the public road, where he was struck by a vehicle driven by Richard Cutts.

Caleb and his mother filed a diversity action in the United States District Court for the District of Maine, demanding damages against Cutts, a Vermont resident, for negligence and negligent infliction of emotional distress. Cutts answered, pleading comparative negligence on the part of Caleb and his mother as an affirmative defense and interposing a counterclaim for contribution against Mrs. Lash for alleged negligent supervision of Caleb. At trial, plaintiffs introduced evidence that the Cutts vehicle had been travelling in excess of the posted speed limit at the time of the collision. Cutts sought to establish that Caleb had violated a motor vehicle regulation requiring that a vehicle exiting from a driveway yield to a vehicle travelling on a primary road.

Although the jury determined that all parties were negligent, Cutts successfully established that Mrs. Lash had been negligent in failing to supervise Caleb, that her negligence should be imputed to Caleb, and that the combined negligence of Mrs. Lash and Caleb exceeded the negligence of Cutts, thereby precluding any recovery by Caleb. Plaintiffs filed a motion for new trial, on the ground that the jury charge misstated applicable Maine law in two material respects. The district court denied the motion for new trial, and plaintiffs appealed.

## I

### DISCUSSION

#### A. *Imputation of Parental Negligence to a Child*

The plaintiffs challenge the following jury instruction as a misstatement of Maine law on the imputation of parental negligence to a child:

[A] parent has a duty to exercise reasonable care to supervise his or her child. A parent also has a duty to maintain his or her child's bicycle. As I have already explained, these duties are based on what would be expected of a reasonable person under the circumstances.

Thus, if a parent is negligent in failing to supervise his or her child, or maintain his or her child's bicycle, then the negligence of the parent may be imputed to the child and may reduce the child's recovery against the defendant.

We will affirm the district court judgment unless we determine that the challenged instruction, to which timely objection was taken pursuant to Federal Rule of Civil Procedure 51, misstated applicable Maine law and that a correct instruction would have resulted in a different outcome. *See Elwood v. Pina,* 815 F.2d 173, 177 (1st Cir.1987).

At common law, the imputation of parental contributory negligence to an injured

child was based on the theory that the special parent-child relationship amounted to an agency, requiring reasonable parental control over the actions of the child. *See W. Page Keeton, et al., Prosser and Keeton on the Law of Torts* § 74, at 530–32 (5th ed. 1984). Although in some circumstances both parent and child could be found contributorily negligent at common law, *see, e.g., Cadman v. White,* 296 Mass. 117, 5 N.E.2d 19 (1936), as plaintiffs analyze *Day v. Cunningham,* 125 Me. 328, 133 A. 855 (1926), and *Orr v. First National Stores, Inc.,* 280 A.2d 785 (1971), Maine law no longer permits a finding that both Caleb and his mother were negligent.

*Day* was a negligence action brought in behalf of an eight-year-old girl against a motorist whose vehicle struck the girl as she crossed a public street while accompanied by her mother. In reviewing the sufficiency of the evidence supporting the judgment for the plaintiff child, the Maine Law Court discussed the doctrine of imputed contributory negligence:

If the plaintiff had been *a child of very tender years incapable of exercising any degree of care,* the doctrine of imputed negligence would apply.... We hold that it also applies in case of *children old enough* and of sufficient intelligence *to exercise some degree of care,* if such children are *accompanied by a parent who directs their movements.*

*Day,* 125 Me. at 332, 133 A. at 857 (emphasis added).

The plaintiffs assert that imputation of parental negligence is impermissible under Maine law except in the particular circumstances delineated in *Day.* Thus, as Caleb was not "accompanied" by his mother at the time he was injured, *cf. Orr,* 280 A.2d at 788, plaintiffs argue that the district court was required to instruct the jury that Mrs. Lash's negligence could only be imputed to Caleb if Caleb was too young to exercise *any* degree of care for his own safety.[1]

---

1. Plaintiffs further contend that recent Maine cases altogether abandon the doctrine of imputation of parental negligence. We cannot agree. Although the Law Court did adopt *Restatement*

*(Second) of Torts* § 316 (1985), in *Merchant v. Mansir,* 572 A.2d 493 (Me.1990), by its terms Restatement § 316 applies only to the parent's duty to prevent the child from causing harm to

■■■ Maine decisional law evaluates the contributory negligence of the child and the negligence of the parent under related but distinct criteria. The conduct of the child is gauged against the objective standard of care reasonably expected of children of similar age and intelligence confronted with a similar risk of harm, without regard to the particular capacity of the individual child to exercise care for his own safety. *See Orr,* 280 A.2d at 796. The jury determination as to the reasonableness of parental supervision takes into account, *inter alia,* what a reasonable parent knows or should know about her own child's capacity to exercise care for his own safety in the particular circumstances. *See Grant v. Bangor Ry. & Elec. Co.,* 109 Me. 133, 138–39, 83 A. 121, 123 (1912). The analysis propounded by plaintiffs on appeal blurs this important distinction.

Under Maine law, "[t]he standard of age at which a child is chargeable with parental negligence cannot be absolutely fixed, although within certain limits it may be approximately determined." *Grant,* 109 Me. at 137–138, 83 A. at 123. A very young child may be determined inherently incapable of negligence *in his own right,* as a matter of law, leaving for jury determination only the alleged negligence of the parent in supervising the child. *See, e.g., Gravel v. LeBlanc,* 131 Me. 325, 329–330, 162 A. 789, 791 (1932) (child under four years of age considered *non sui juris* and "not capable of exercising care for his own safety"); *Morgan v. Aroostook Valley R.R. Co.,* 115 Me. 171, 174, 98 A. 628, 629 (1916) (two-year-old child "not of sufficient age to exercise any care").[2] This jury assessment of the objective reasonableness of parental conduct in the particular circumstances indicated by the evidence must of necessity take into account the youth and inexperience of the individual child as factors to be weighed in measuring the standard of care incumbent on the parent. *See Gravel,* 131 Me. at 331, 162 A. at 792. We understand this to be the rationale undergirding the rule announced in the first portion of the quotation from *Day v. Cunningham* relied on by the plaintiffs, *see supra* text at p. 149.[3] The quoted language is inapposite to the present case, since Caleb, as a child of five years of age, was not determined incapable of negligence in his own right as a matter of law. Nor are we aware of any Maine precedent for determining a five-year-old child intrinsically incapable of any negligence.

The Law Court considered it significant in *Day* that the child had acted at the direction of her mother when crossing the street. *See Day,* 125 Me. at 331–32, 133 A. at 856–57. The jury therefore reasonably could have concluded that the child normally would have been capable of exercising care for her own safety in crossing a public

---

*others,* and not to the parental duty to protect the *child* from harm. *Id.* at 494. Similarly, plaintiffs contend that the court implicitly abandoned imputation as an affirmative defense in *Purwin v. Robertson Enters., Inc.,* 506 A.2d 1152 (Me.1986), and instead now sanctions third-party contribution claims against the parent, which do not defeat recovery by the child. *Purwin,* however, merely noted that no challenge had been raised on appeal to a trial court order striking the imputation defense. *Id.* at 1153 n. 2. Accordingly, plaintiffs have not met their burden of demonstrating clear authority for their contention that the imputation defense is no longer available in Maine. *See Carlton v. Worcester Ins. Co.,* 923 F.2d 1, 3 (1st Cir.1991) (litigants who bring suit under federal diversity jurisdiction bear heavy burden of establishing that longstanding state precedent has been abandoned by state's highest court).

**2.** Conversely, at the other extreme, a much older child might be determined, as a matter of law, altogether capable of exercising the requisite care in the particular circumstances, thereby precluding the imputation of any parental negligence to the child. *See Meserve v. Libby,* 115 Me. 282, 286, 98 A. 754, 755 (1916); *Grant,* 109 Me. at 138, 83 A. at 123. Except in rare cases involving children of very mature years, however, the imputation of parental negligence remains a jury question.

**3.** On the other hand, the procedural posture of *Day v. Cunningham* undermines plaintiffs' interpretation of the quoted language. In *Day,* the court was not reviewing the correctness of a jury instruction, but the sufficiency of the evidence supporting the judgment entered for the plaintiff child. If the plaintiff child or her mother could not, as a matter of law, have been negligent, the Law Court could have upheld the verdict without reviewing the sufficiency of the evidence regarding that party's alleged contributory negligence.

street, but that she relied on her mother's judgment. *See id.* Thus, insofar as the directive of the accompanying parent in *Day* overrode the judgment of the child, the child's ability to exercise care for her own safety in the particular circumstances was rendered inoperative, hence immaterial, and any negligence of the parent would be imputed to the child. Accordingly, the *Day* court had only to ascertain whether the jury rationally could have concluded that the mother had not been negligent. *See id.*

By analogizing to *Orr*, 280 A.2d 785 (Me. 1971), from the facts underlying the *Day* decision, plaintiffs mischaracterize *Orr.* The eight-year-old child in *Orr* was *not* "accompanied" by her mother at the time of her injuries. Although the mother had accompanied the child into the store, the mother was *not* present when the child undertook to swing from the railing. Furthermore, in *Orr* the mother did not *direct* her daughter to engage in the dangerous conduct that resulted in her injury. *See id.* at 788, 797.

■ Properly characterized, *Orr* stands for the proposition that, in cases involving older children not accompanied by a parent, the two related but distinct questions under discussion (the child's own negligence, based on an objective standard of care for children of similar age and intelligence, and the reasonableness of the parent's supervision in light of the child's actual ability to exercise care independent of the parent) are for determination by the jury, not matters of law for the court. *See id.* at 796.[4]

■ The jury in the present case properly was instructed on the standard of care expected of children, and concluded that Caleb was negligent. Since his mother neither accompanied nor directed Caleb at the time he was injured, the jury was required to determine whether Mrs. Lash knew or should have known (i) of the particular risk of harm to which Caleb might be subjected, and (ii) Caleb's capacity to exercise due care in his own behalf in the particular circumstances. The jury properly was instructed to evaluate Mrs. Lash's supervision of Caleb "based on what would be expected of a reasonable person under all the circumstances." Thus, implicit in the verdicts rendered in the aftermath of the challenged instruction is a jury determination that Mrs. Lash knew or should have known that Caleb would be incapable of exercising the requisite degree of care for his own safety if allowed to remain at the neighbor's home outside the supervision of a family member.[5]

**B.** *"Rule of the Road" Instruction*

All parties, as well as the district court in its ruling on plaintiffs' motion for new trial, ultimately agreed that the "rule of the road" instruction misstated applicable Maine law.[6] Evidence of a violation of a rule of the road is not negligence *per se* under Maine law, but *prima facie* evidence which may be rebutted by the party against whom it is admitted. *See Trusiani v. Cumberland & York Distribs.*, 538 A.2d 258, 262 (Me.1988). It is apparent that the erroneous "rule of the road" instruction

4. In upholding a jury determination that the mother in *Orr* had not been negligent, the court adverted to evidence that the child had been well behaved prior to leaving her mother and that the mother was unaware that the child's destination, a bubble gum machine located near the front of the store, was so close to the railing where the child was injured. *Orr*, 280 A.2d at 797.

5. Although much of the evidence relating to the reasonableness of Mrs. Lash's supervision was controverted, Cutts' entitlement to the instruction on imputed negligence was firmly grounded on evidence that Caleb had never before been left outside family supervision, that he had nev-

er before visited this neighbor's house, that Mrs. Lash gave Caleb no explicit instruction prior to his departure for the playground, that she did not know the neighbor with whom Caleb was visiting, that she did not ask the neighbor any questions during their telephone conversation, and that she knew that Caleb had no prior experience riding his tricycle beyond certain designated areas near the family home and business.

6. The court instructed the jury: "If you find by a preponderance of the evidence that a party violated one or more of these regulations, you must find that party negligent as a matter of law."

152

may have influenced the jury verdicts. *See* Fed.R.Civ.P. 61.

 In this instance, however, plaintiffs failed to object to the instruction as required by rule 51: "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict...." Fed.R.Civ.P. 51; *see, e.g., Smith v. Massachusetts Inst. of Technology,* 877 F.2d 1106, 1110 (1st Cir.1989); *Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors,* 850 F.2d 803, 809 (1st Cir.1988); *United States v. Taglianetti,* 456 F.2d 1055, 1056–57 (1st Cir.1972). The "plain error" exception to rule 51 is rarely invoked, since the failure to object below effectively denies the trial court any opportunity to obviate the need for an appeal. *See Kelley v. Schlumberger Technology Corp.,* 849 F.2d 41, 44 (1st Cir.1988); *Coy v. Simpson Marine Safety Equip., Inc.,* 787 F.2d 19, 26 (1st Cir.1986).[7] Absent timely objection, an erroneous jury instruction warrants a new trial only in the exceptional case where the error "seriously affected the fairness, integrity or public reputation of judicial proceedings." *See Smith,* 877 F.2d at 1110; *Wells Real Estate,* 850 F.2d at 809.

 Reviewing the jury charge in its entirety, we conclude that the challenged instruction did not constitute plain error. First, both Caleb and Cutts allegedly violated motor vehicle regulations, and were disadvantaged by the erroneous instruction. Although plaintiffs fairly reason that Caleb may have been more severely disadvantaged because a child of his age and intelligence normally would not be held to the level of care required under the motor vehicle laws, it is also true that excessive speed was the principal evidence of negligence offered against defendant Cutts. Second, plaintiffs were represented by counsel, who were accorded ample opportunity to interpose timely objection pursuant to rule 51, *see Morris v. Travisono,* 528

F.2d 856, 859 (1st Cir.1976), as indicated by the numerous challenges made to various other jury instructions. Finally, our assessment of the record lends considerable support to Cutts' contention that plaintiffs may have preferred to rely on the reasonable prospect that the erroneous jury instruction might afford them a net advantage over defendant Cutts.

*The district court judgment is affirmed; costs to appellee.*

---

**7.** Plaintiffs mistakenly cite to *Allen v. Chance Mfg. Co.,* 873 F.2d 465 (1st Cir.1989), as a case involving a jury instruction so seriously flawed as to warrant a new trial. Plaintiffs overlook the fact that the trial court in *Allen,* over the defendant-appellant's timely objection, refused to give a jury instruction specifically requested by the defendant-appellant. *Id.* at 467.