USCA1 Opinion

 

 June 3, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-1763 TAREK H. ELGABRI, M.D., Plaintiff, Appellant, v. MARY D. LEKAS, M.D., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Cyr, Circuit Judge, _____________ and Stahl,* District Judge. ______________ ____________________ Cornelius J. Moynihan, Jr. with whom Sue Zanne Worrell and _____________________________ __________________ Peabody & Brown were on brief for appellant. _______________ W. James McKay (for appellee Robinson) and John J. Barton (for _______________ _______________ appellee Duva) with whom Adler Pollock & Sheehan Incorporated, Taylor, ____________________________________ _______ Anderson & Travers, Dennis J. McCarten, Hanson, Curran, Parks & ___________________ ____________________ __________________________ Whitman, David W. Carroll, Roberts, Carroll, Feldstein & Peirce, _______ _________________ _______________________________________ Christopher H. Little, Judith Kapuscinski, Tillinghast, Collins & ______________________ ___________________ _______________________ Graham, William Jestings, and Carroll, Kelly & Murphy were on joint ______ ________________ ________________________ brief for appellees. ____________________ ____________________ ____________________ *Of the District of New Hampshire, sitting by designation. STAHL, District Judge. This is an appeal from a _______________ nineteen-day jury trial. Plaintiff-appellant Dr. Tarek H. Elgabri alleged various violations of state and federal antitrust laws, as well as a common law claim of tortious interference with prospective business relationships, against various doctors affiliated at four Rhode Island hospitals. The jury found for defendants on all counts. On appeal, Dr. Elgabri challenges the jury instructions, the order of examination of witnesses, and various evidentiary rulings. We affirm. Background Background Dr. Elgabri is an otolaryngologist practicing in Rhode Island. Otolaryngology is commonly referred to as "ear, nose and throat" (ENT) medicine. He began his residency in otolaryngology at the University of Minnesota. While there, however, he encountered difficulties and was terminated for cause after his first year. He finished his residency at Rhode Island Hospital. In 1984, after concluding his residency, Dr. Elgabri opened his own practice in Rhode Island. He submitted applications for privileges at various hospitals throughout the state. Hospital privileges allow a doctor to treat and admit patients at a given institution. He received privileges at Notre Dame Hospital, Cranston Hospital, Kent -2- County Memorial Hospital, and Memorial Hospital. Despite numerous attempts over the course of several years, however, he failed to receive privileges at Miriam Hospital, Roger Williams Hospital, Rhode Island Hospital, and St. Joseph Hospital. On November 9, 1989, Dr. Elgabri brought suit against six doctors: Dr. Mary Lekas, surgeon-in-chief of the otolaryngology department at Rhode Island Hospital; Dr. Steven Issenberg, director of the division of otolaryngology at Roger Williams General Hospital; Dr. Hani Zaki, a medical doctor specializing in otolaryngology who has privileges at the four hospitals that denied Dr. Elgabri privileges; Dr. Mendell Duva, the chief of the otolaryngology department at St. Joseph Hospital; Dr. Mendell Robinson, director of the division of otolaryngology at Miriam Hospital; and Dr. Wexler, the present director of the division of otolaryngology at Roger Williams Hospital.1 Each of the above-named defendant doctors is affiliated at the four hospitals which denied plaintiff privileges. Dr. Elgabri alleged: 1) defendants violated 1 of the Sherman Act by agreeing not to deal with him and encouraging others not to deal with him, thereby constituting a group boycott; 2) defendants violated 2 of the Sherman Act by ____________________ 1. The case against Dr. Wexler was dismissed with prejudice after day twelve of the jury trial. -3- conspiring to monopolize the provision of ENT medical and surgical services in the relevant market; 3) defendants monopolized the referral of patients to ENT doctors and have maintained their monopoly by denying plaintiff privileges, an essential facility to his practice of medicine; 4) defendants wilfully contracted, combined, and conspired in restraint of trade in violation of Rhode Island antitrust law; and 5) defendants tortiously interfered with plaintiff's prospective business relationships by preventing him from obtaining staff privileges. On May 29, 1991, the jury found in favor of defendants on all claims. Plaintiff appealed. Discussion Discussion Plaintiff raises five issues on appeal: 1) whether the district court erred in instructing the jury as to defendants' motivations; 2) whether the district court erred in its instructions regarding the "essential facilities" claim; 3) whether the court erred in instructing the jury to utilize a "rule of reason" analysis regarding the group boycott claim; 4) whether the district court erred in preventing plaintiff from examining defendants on direct as part of his case-in-chief; and 5) whether the district court erred in various evidentiary rulings made throughout the trial. -4- A. Jury Instructions _________________ Dr. Elgabri challenges three aspects of the jury instructions. He first objects to the court's instruction as to motivation under his 2 Sherman Act claim involving the denial of essential facilities. The court gave this instruction: If the Defendants in this case acted, even in part, with an intention to promote good patient care to protect the patients and the hospitals from the actions of physicians who are not unquestionably qualified under all professional standards, their actions are lawful under the antitrust laws. If, however, the Defendants used the peer review process for the sole purpose of promoting their own self-interest as competitors, then their actions are not immune from liability. Plaintiff argues that the instruction improperly required the jury to find for the defendants unless their sole motivation was anti-competitive. Dr. Elgabri also objects to the court's refusal to give a "per se" instruction regarding his "group boycott" claim and challenges the court's refusal to instruct regarding his claim that defendants interfered with his own patients' utilization of various essential hospital facilities. We need not tarry over the adequacy of the jury instructions in this case because plaintiff failed to preserve properly his objections. Rule 51 of the Federal Rules of Civil Procedure states in pertinent part: No party may assign as error the giving or the failure to give an instruction -5- unless that party objects thereto before ______ the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury. (Emphasis added). "We have consistently and emphatically held that failure to follow the letter of the rule constitutes a waiver of the objection." Cordero v. De _______ __ Jesus-Mendez, 867 F.2d 1, 5 (1st Cir. 1989); see also Lash v. ____________ ___ ____ ____ Cutts, 943 F.2d 147, 152 (1st Cir 1991); Smith v. _____ _____ Massachusetts Instit. of Technology, 877 F.2d 1106, 1109 (1st ___________________________________ Cir.), cert. denied, 493 U.S. 965 (1989). _____ ______ After the judge charged the jury, the following exchange took place: THE COURT: Would you please deliver to the Marshal the instruction I read to the jury, the verdict form and the exhibits? Draw the alternate jurors THE CLERK: Alternate No. 1, Susan Dome. Alternate No. 2, Luther Wechestein. THE COURT: The Court will designate Miss Gramaldi as Foreperson Counsel, come to the bench, please. (COLLOQUY AT BENCH) THE COURT: Any grievous omissions or corrections right now before the jury goes out, anything that's egregious. Is there anything misleading or something like that? MR. CARROLL (attorney for defendant Dr. Lekas): No, your honor. -6- THE COURT: All right, okay, I'm going to send them ________________________________________ out and then take exceptions. ____________________________ I'm going to ask Mr. Wechestein, Miss Dome to remain. The other members of the jury may retire now to commence your deliberations. Take them out, Marshal. ______________________ (DELIBERATING JURY EXITS COURTROOM) (Emphasis added). After the court dismissed the jury to commence deliberations and briefly conversed with the alternate jurors, the following discussion occurred: THE COURT: I know that I do not have to remind Counsel of the rule in the First Circuit that you don't talk to jurors before or after verdicts without an order of the Court. You're aware of that I am sure. Now, how about the instructions, what's _________________________________________ the objections? Let me get my set of _________________________________________ instructions. ____________ MR. MEDEIROS (attorney for plaintiff Dr. Elgabri): Your Honor, I would just make the comments in the order that they are in the instructions, rather than in any particular order of priority. (Emphasis added). Plaintiff then proceeded to object to the jury instructions at issue on this appeal. "We have warned trial attorneys countless times `that Rule 51 means what it says . . . .'" Linn v. Andover Newton ____ ______________ Theological Sch., Inc., 874 F.2d 1, 5 (1st Cir. 1989) _________________________ (quoting Jordan v. United States Lines, Inc., 738 F.2d 48, 51 ______ _________________________ (1st Cir. 1984)). Appellant's trial counsel voiced no -7- objection to the court's instructions "before the jury retire[d]" as required by Rule 51 in an unbroken line of decisions in this Court. Although the phrasing of the district court's inquiry may have contributed to a belief that little might be gained by asserting objections before the jury retired, trial counsel was obligated to object in the manner required by Rule 51. It is the obligation of trial counsel, as well as the trial court, to comply with the strict requirements of the Rule.2 In the absence of compliance with the dictates of Rule 51, we review for plain error. "However, the plain error rule `should be applied sparingly and only in exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice.'" Wells Real Estate, Inc. v. Greater _______________________ _______ Lowell Bd. of Realtors, 850 F.2d 803, 809 (1st Cir.) (quoting ______________________ Nimrod v. Sylvester, 369 F.2d 870, 873 (1st Cir. 1966)), ______ _________ cert. denied, 488 U.S. 955 (1988). In reviewing the _____ ______ instructions given by the district court using this standard, we find no "miscarriage of justice." B. Establishment of Mode and Order of Examination of _________________________________________________ Witnesses _________ ____________________ 2. Plaintiff's counsel subsequent to argument has cited the court to Bouley v. Continental Casualty Co., 454 F.2d 85 (1st ______ ________________________ Cir. 1972). However, our unbroken line of cases make it clear that insufficient compliance with Rule 51 will be overlooked only in exceptional cases or under peculiar circumstances to prevent a clear miscarriage of justice. Coy ___ v. Simpson Marine Safety Equip., Inc., 787 F.2d 19, 26 (1st ___________________________________ Cir. 1986). This is not such a case. -8- Dr. Elgabri argues that his ability to call defendants during his case-in-chief was improperly limited by the trial court. He contends that he has an "unfettered right to call the adverse party on direct examination as part of his case- in-chief and to interrogate by leading questions without restrictions." As part of his case-in-chief, Dr. Elgabri called defendant Dr. Lekas. After some examination of the witness, the court informed plaintiff during a recess that "it's unfair sometimes for a Plaintiff to prove his case through the mouth of the Defendant." Dr. Elgabri then continued his examination of Dr. Lekas. After the day's testimony, the court decided to limit plaintiff's examination of defendants in his case-in-chief to subject matter that could not be obtained in any other fashion. The court suggested that plaintiff could prove the essential nature of a defendant's testimony in a proffer prior to the examination of each defendant. Defendants promised that they would take the stand as part of their case-in-chief and the court indicated that plaintiff would have ample opportunity to cross-examine them at that time. The court further indicated that no limits would be placed on the scope of cross-examination. Plaintiff thereafter made no further proffers and vigorously cross-examined the other defendants during their presentations. -9- We find that plaintiff did not have an "unfettered right" to call defendants during his case-in-chief. Rule 611(a) of the Federal Rules of Evidence states in pertinent part: The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, [and] (2) avoid needless consumption of time . . . [.] The mode and order of questioning thus lies in the trial court's discretion. See United States v. Nivica, 887 F.2d ___ ______________ ______ 1110, 1120 (1st Cir. 1989), cert. denied, 494 U.S. 1005 _____ ______ (1990). We do not disturb decisions regarding courtroom management unless these decisions amount to an abuse of discretion that prejudices appellant's case. Loinaz v. EG&G, ______ _____ Inc., 910 F.2d 1, 6 (1st Cir. 1990); see also 3 Jack B. ____ ___ ____ Weinberg & Margaret A. Berger, Weinstein's Evidence 611[01] ____________________ at 611-17 (1991) ("Once the judge exercises his power, his decision is virtually immune to attack and will be overturned only in the rare case where the appellate court finds a clear abuse of discretion that seriously damaged a party's right to a fair trial."). Dr. Elgabri argues that Fed. R. Evid. 611(c), which allows for leading questions of adverse parties on direct examination, requires the court to allow direct examination -10- of defendants in his case-in-chief.3 Rule 611(c) does not, however, impose such a requirement. Rather, Rule 611(c) only requires that the court allow a plaintiff who calls an adverse party on direct to use leading questions in his examination because the witness is presumed hostile. See ___ Fed. R. Evid. 611(c), advisory committee's note; see also 3 ___ ____ Weinstein's Evidence 611[05] at 611-82 to 611-83. ____________________ In this case, the court reasonably held that plaintiff's examination of defendants should be limited in the described manner in order to make the presentation of evidence effective and to avoid needless consumption of time. Further, plaintiff does not argue that he failed to obtain evidence as a result of the district court's limiting of his presentation of his case; he only objects to the order of presentation. We therefore find no reversible error. C. Evidentiary Errors __________________ Dr. Elgabri challenges four evidentiary rulings of the district court. He contends that the court erred in refusing to admit evidence that defendant Dr. Issenberg was unable to ____________________ 3. Fed. R. Evid. 611(c) states in pertinent part: Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross- examination. When a party calls . . . an adverse _____________________________________ party, . . . interrogation may be by leading ___________________________________________________ questions. _________ (Emphasis added). -11- perform a tracheotomy. Plaintiff also challenges the court's exclusion of a letter from the New England Otolaryngological Society notifying Dr. Elgabri that his presentation was "the winner among those presented by residents from the other New England teaching hospitals." He further contests the court's refusal to admit a letter of recommendation written by Mrs. Eleanor Edmonds, an operating room nurse at Rhode Island Hospital and director of operating room services. Finally Dr. Elgabri argues that the court improperly admitted into evidence segments of testimony from a Minnesota state case he had previously instituted. 1. Dr. Issenberg's "Inability" to Perform ______________________________________________ Tracheotomy ___________ Plaintiff attempted to ask defendant Dr. Robinson on cross-examination whether he was aware that Dr. Issenberg was unable to perform a tracheotomy.4 In a conference at the bench, the parties disputed the circumstances surrounding Dr. Issenberg's "refusal" to perform a tracheotomy in the emergency room. Dr. Issenberg's counsel explained that his client had not refused or been unable to perform the procedure, but rather that he had considered it appropriate that a general surgeon perform the procedure. Counsel for Dr. Elgabri argued that there was no general surgeon on duty ____________________ 4. During Dr. Robinson's testimony, he stated that, in writing a negative letter about plaintiff which was placed in plaintiff's file at Miriam Hospital, he had relied to some extent on information received from Dr. Issenberg. -12- at the time and that Dr. Issenberg's "refusal" constituted negligence. The court observed that Dr. Issenberg's alleged negligence during the incident in the emergency room had little to do with the issues at trial. The court then decided that the testimony would be "getting a long way from wherewe're going,"andthereforesustained defendants'objection. Rule 403 of the Federal Rules of Evidence requires a court to balance the relevance of evidence against the substantial risk of prejudice and the cumulative nature of the evidence. Miller v. Town of Hull, 878 F.2d 523, 529 (1st ______ ____________ Cir. 1989). A decision to exclude evidence under Rule 403 is within the discretion of the trial court. We will review such a ruling only for abuse of discretion. United States v. _____________ Rodriguez Cortes, 949 F.2d 532, 541 (1st Cir. 1991). ________________ We find no abuse of discretion. The court reasonably found that the evidence, though marginally relevant, was only tangentially related to the issue at hand. The court determined that the evidence would only confuse the issues which were at the heart of the litigation. It was well within the court's discretion to exclude the evidence for that reason. 2. Exclusion of Prize Notification Letter ______________________________________ As noted above, Dr. Elgabri attempted to admit a letter from the New England Otolaryngological Society notifying him that his case presentation was the winner among presentations -13- made by residents from New England teaching hospitals. The court excluded it as hearsay. Plaintiff argues that it should have been admitted under the business record exception to the hearsay rule.5 Fed. R. Evid. 803(6). Rulings of the district court under Rule 803(6) are reversed only for abuse of discretion. Belber v. Lipson, 905 ______ ______ F.2d 549, 552 (1st Cir. 1990). "Admission as a business record requires `the testimony of the custodian or other qualified witness.' This testimony is essential. Without such a witness the writing must be excluded." Id. (citation ___ omitted). Dr. Elgabri never offered the testimony of a custodian or other qualified witness. We, therefore, find that the court properly excluded the letter.6 3. Other Evidentiary Objections ____________________________ We briefly address Dr. Elgabri's remaining claims. Dr. Elgabri argues that the court improperly excluded Nurse Edmond's letter. He claims that the letter had been authenticated as part of his application file at Roger Williams Hospital. The letter, however, was properly excluded as inadmissible hearsay not within any exception. ____________________ 5. Plaintiff also argues that the court should have admitted the letter under the "catch-all exception." Fed. R. Evid. 803(24). Because plaintiff failed to offer proof in the court below that the requirements of Rule 803(24) were met, we deem this claim waived. See Fed. R. Evid. 103(a)(2). ___ 6. We also note that the letter's substance did find its way into evidence through plaintiff's uncontradicted testimony. -14- Fed. R. Evid. 802. Even if we assume that the letter was part of his application file, Dr. Elgabri failed to produce a qualified witness or custodian of records to authenticate the letter as a business record. See Belber, 905 F.2d at 552. ___ ______ Finally, Dr. Elgabri states without elaboration that testimony from a Minnesota state court litigation instituted by him was improperly admitted. It is a settled appellate rule, however, "that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, _____________ _______ 895 F.2d 1, 17 (1st Cir.), cert. denied, 494 U.S. 1082 _____ ______ (1990). Finding that Dr. Elgabri failed to develop any argument after raising this issue, we deem this claim waived. Conclusion Conclusion For all of the above reasons, we affirm the district court's challenged rulings. Affirmed. _________ -15-